**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Donald A. BRANDON, Defendant-Appellant.**

**No. 71–2899.**

United States Court of Appeals, Ninth Circuit.

Oct. 12, 1972.

---

Theodore Orliss (argued), Los Angeles, Cal., for defendant-appellant.

Leslie E. Osborne, Asst. U. S. Atty. (argued), Eric A. Nobles, Robert P. Scheinblum, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before TRASK and CHOY, Circuit Judges, and RENFREW,* District Judge.

TRASK, Circuit Judge:

This is an appeal by the defendant-appellant, Donald Brandon, from his conviction for counterfeiting activity in violation of 18 U.S.C. § 474.

On May 5, 1971, he was indicted on four counts: (1) possessing plates and other materials for counterfeiting government obligations; (2) possessing five (5) counterfeit One Dollar Federal Reserve Notes, in violation of 18 U.S.C. § 472; (3) with making a plate to counterfeit One Dollar ($1) and Twenty Dollar ($20) Federal Reserve Notes; and (4) with making five (5) counterfeit One Dollar ($1) Federal Reserve Notes, in violation of 18 U.S.C. § 471. Brandon was convicted in a non-jury trial on Counts One and Three relating to possession of counterfeiting plates. He was acquitted on Counts Two and Four when the court suppressed evidence of the counterfeit bills as the product of an unlawful search of Brandon's car. After sentence of two concurrent five-year terms, he appeals. His contention is that the evidence of the counterfeiting plates and his confessions should also have been suppressed as the product of an illegal search.

Officer Cella of the Garden Grove, California, Police Department, testified that on March 31, 1971, at about 2:00 a. m. he observed Brandon's automobile parked in front of a self-service laundromat. Two men were in the front seat with the engine running. They looked around in the direction of the officer's car and then drove away. The officer stopped them shortly because of what he termed "suspicious actions" and because there are thefts, burglaries and breaking into machines at laundromats. Brandon produced what the officer believed to be a spurious driver's license, which was in the name of Lloyd Hunter. He had no other identification. The passenger said that he was unemployed, had no permanent address and had no identification. Brandon stated that he did not own the car, but consented freely to a search when the officer asked him for permission to search the car. It was during this search that the counterfeit one dollar bills were discovered. The two occu-

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

pants were advised of their Miranda rights and were arrested.

A secret service agent testified that he was advised by the Garden Grove Police Department on March 31, 1971, that a Donald Brandon had been arrested and had in his possession five reproductions of one dollar bills. He went to the jail, advised Brandon of his constitutional rights and talked to him.[1] During the conversation Brandon denied that he had any printing equipment at the house where he resided and told the agent, in response to a request for permission, that it would be all right for him to go out and search the place provided the agent checked with his wife, adding, "It's her house." The agent did obtain a written consent from the wife, searched the house and garage and found a complete printing shop in the garage with plates that could be used in the manufacture of counterfeit one dollar and twenty dollar bills. The following morning Agent Griffiths picked Brandon up at the Orange County Jail and, after giving a Miranda warning in the car, talked to him about the search. Griffiths called his office on the radio at one point and asked what had been found in the search. Brandon heard the reply on the speaker. After hearing what was found in the search, Brandon told the entire story to Griffiths. At the Secret Service office the oral admissions were reduced to a written confession.

The issues raised by appellant relate to the admissibility of the counterfeiting plates found at the house, and the admissibility of the oral and written confessions. Appellant contends that this evidence is the result of the exploitation of the original illegal search of the automobile and is tainted by that illegality within the rule of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.

Ed.2d 441 (1963), and thus was inadmissible. The Court there said:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" 371 U.S. at 487–488, 83 S.Ct. at 417.

The trial court held that based upon this court's decision in United States v. Bacall, 443 F.2d 1050 (9th Cir.) cert. denied, 404 U.S. 1004, 92 S.Ct. 565, 30 L. Ed.2d 557 (1971), the evidence obtained from the search of the house and the oral and written confessions were admissible. We agree.

In that case an investigation by Customs Officials directed at misdescription of goods resulted in discovery of understatement of purchase prices. The information which triggered the investigation of misdescription was obtained as the result of an illegal seizure. The issue was whether the discovery of the purchase price understatement was the "fruit of the tree." We said there that the connection was not just a "but for" relation but rather, whether anything seized or any leads gained from that illegal activity "tended significantly" to direct the secondary investigation directly toward the evidence in question. Seven criteria were noted in making that evaluation. 443 F.2d at 1057–1059.

■ Without discussing each in detail, a comparison will indicate the similarity between *Bacall* and this case which prompted the trial court to find that the plates and the confessions were not "fruit of the tree." In addition, unlike *Bacall*, there was here a pre-existing

---

1. No question is raised as to the adequacy of the notification by the agent to Brandon of the latter's constitutional rights. In fact Miranda warnings were given throughout all arrest and interrogation proceedings and no issue exists on this question.

report from a confidential informant that Brandon was seeking paper to use in manufacturing counterfeit money. In an effort to connect the Secret Service investigation to the illegal search, the agent was cross-examined as follows:

"Q. The first thing that came to your attention was the information that he had been arrested with the five $1 bills?

"A No, sir.

"Q What——

"A Mr. Brandon's name was indexed in our files as a result of information that I had received from a confidential informant. As a result of his name being indexed in our file, when he was arrested by the Garden Grove Police Department, I was notified that he was in custody." R.T. at 34–35.

We said in *Bacall, supra:*

"Where the evidence sought to be suppressed was discovered through utilization of some legally obtained leads as well as some illegally obtained leads, the substantiality of the legally obtained leads may influence the determination whether the evidence ought to be suppressed." 443 F.2d at 1056.

At the conclusion of the testimony on the question of suppression of the evidence there was a colloquy between the court and defense counsel:

"THE COURT: (referring to *Bacall*) "[I]n that case and this case the search of the house was derived from the source independent of the illegal search of the automobile because it was consented to by Mrs. Gilmore, and the investigation was as the result of independent knowledge that the Secret Service Agents had from the undisclosed informer concerning Mr. Brandon's counterfeit activity——

"MR. ORLISS: I must——

"THE COURT: ——and I make that finding, Mr. Orliss." R.T. at 50–51.

On the record as a whole we cannot say that the court was clearly erroneous.

 We find no merit in Brandon's contention that his confession was involuntary because he was promised release on his own recognizance. Although the evidence was conflicting on when he was told this, there was his own testimony that he admitted all the equipment belonged to him before the "own recognizance" statement was made to him. Further, the district court was not in error in finding that Brandon's will was not overborne by the statement. Fernandez-Delgado v. United States, 368 F. 2d 34 (9th Cir. 1966).

Judgment affirmed.