John W. SINGLETON, a/k/a John Westly, a/k/a John Sinkler

v.

COMMISSIONER OF INTERNAL REVENUE, John W. Singleton, Appellant.

No. 78–2599.

United States Court of Appeals, Third Circuit.

Argued Sept. 4, 1979.

Decided Sept. 28, 1979.

Richard A. Levine (argued), Laurence Goldfein, Ira L. Tilzer, Roberts & Holland, New York City, for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Robert A. Bernstein, Francis J. Gould (argued), Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before ALDISERT, ROSENN and GARTH, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This appeal from a decision of the United States Tax Court requires us to analyze the effect of a pat-down search by a United States Customs security officer of an aircraft passenger boarding an international flight. The search disclosed $20,000 in cash in the taxpayer's suit coat. He was requested to report possession of the money on a Customs Service Form 4790 entitled "Report of International Transportation of Currency or Monetary Instruments." [1]  A subsequent examination of the completed

---

1. Sections 1101 and 1102 of Title 31 of the United States Code require any person who transports an amount of money in excess of $5,000 out of the United States to file a report thereof; failure so to report subjects the currency to seizure and forfeiture to the United States.

form by a special agent of the Intelligence Division of the Internal Revenue Service led to a tax investigation which eventually resulted in a jeopardy assessment by the Commissioner. It is conceded that no investigation of the taxpayer by the IRS would have resulted but for the information gleaned from the customs service report.

The United States Tax Court determined that the airport search violated rights guaranteed the taxpayer by the fourth amendment and suppressed certain, but not all, of the information gathered from the customs service form.[2] The court excluded the information under the fruit of the poisonous tree doctrine that has emanated from such cases as *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), and *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). On appeal, the taxpayer contends that the court's exclusionary ruling did not go far enough, that *Wong Sun, supra*, demands that all information contained on the form and all leads emanating therefrom should have been excluded. Specifically, he argues that because the IRS commenced the investigation solely as a result of learning his name and address from the customs service form, the entire tax investigation becomes suspect, and all evidence developed from the investigation should have been suppressed.

We affirm the decision of the tax court notwithstanding our disagreement with that court's fourth amendment analysis. *Helvering v. Gowran*, 302 U.S. 238, 245–46, 58 S.Ct. 154, 82 L.Ed. 224 (1937). *See also United States v. Pennsylvania*, 533 F.2d 107, 110 n.7 (3d Cir. 1976); *Rhoads v. Ford Motor Co.*, 514 F.2d 931 (3d Cir. 1975). We hold that the airport search did not violate the fourth amendment for two discrete reasons: the search was justified at its inception and was reasonably related in scope to the circumstances which justified the interference; alternatively, the search was justified by the taxpayer's implied consent.

On the morning of December 7, 1972, appellant John Singleton arrived at the British Overseas Airline Company terminal at Kennedy International Airport for the purpose of boarding a flight to Jamaica. As part of the antihijacking procedure in effect at the BOAC terminal on that date, employees of the United States Customs Service conducted a pre-boarding screening search of all passengers, including Singleton. Because BOAC had not yet perfected a satisfactory magnetometer, the pre-boarding screening procedure required that all carry-on baggage be searched and that each passenger submit to a pat-down search behind portable screens. Signs provided by the Federal Aviation Agency informed ticketholders that all passengers and baggage were subject to search and that all passengers would be required to demonstrate that they were carrying no lethal weapons. If a passenger indicated in any manner that he objected to the search, a customs employee would inform him that the search procedures were a condition of boarding the flight and that if he should decide not to board the flight, the search would not be conducted. Singleton was an experienced international traveler and had flown to Jamaica earlier that year. He made no objection to being searched.

The customs officer who conducted the search detected two solid objects in the breast pockets of Singleton's suit coat. To investigate further, the officer opened the coat, which had previously been unbuttoned by Singleton, and removed two packets which, on inspection, revealed currency. Each packet was approximately 2½ inches wide, 6 inches long and ½ inch thick and contained one hundred $100 bills. The packets were returned to Singleton and he was allowed to board his flight, but only after being required to sign and provide the information required on form 4790.

2. The court excluded evidence relating to the name of the bank that supplied the money to the taxpayer.

Warrantless searches without proper consent are per se unreasonable under the fourth amendment except in certain carefully defined classes of cases. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is now settled that one such exception is a pre-boarding screening search of airline passengers and their carry-on luggage for weapons and explosives. *See, e. g., United States v. Slocum*, 464 F.2d 1180, 1182 (3d Cir. 1972). The courts have recognized that, absent a search, there is no effective means of detecting which airline passengers are reasonably likely to hijack an airplane, and have therefore held that some pre-boarding screening search of each passenger sufficient in scope to detect the presence of weapons and explosives is reasonable under the fourth amendment. The reasonableness of a particular pre-boarding screening search is to be determined by weighing the need to conduct the search against the invasion that the search entails. *See United States v. Freeland*, 562 F.2d 383 (6th Cir.), *cert. denied*, 434 U.S. 957, 98 S.Ct. 484, 54 L.Ed.2d 315 (1977); *United States v. Dalpiaz*, 494 F.2d 374 (6th Cir. 1974); *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973). *See also* cases collected in *United States v. Albarado*, 495 F.2d 799, 801 n.1 (2nd Cir. 1974).

Measured by this test, we conclude that the pre-boarding screening program conducted here was reasonable. The government unquestionably has the most compelling reasons—the safety of hundreds of lives and millions of dollars worth of private property—for subjecting airline passengers to a search for weapons or explosives that could be used to hijack an airplane. In response to this need, the FAA anti-hijacking screening requirements in effect on December 7, 1972 were implemented to assure the uninterrupted and safe operation of our commercial airline passenger transportation system. As to the extent of the invasion, inasmuch as BOAC had not perfected a satisfactory magnetometer, a pat-down search of each passenger was virtually the only screening procedure available to the customs service at the BOAC terminal on December 7, 1972. Although the screening did involve a pat-down search of each passenger, its level of intrusiveness was proportionate to its justification. Passengers were searched courteously, were given advance notice that the search was to be conducted, and could elect not to be searched by deciding not to board the aircraft.

The availability of this option to each passenger serves as our alternative ground for sustaining the search. By electing to proceed and board the aircraft, with advance notice of the search requirement, Singleton impliedly consented to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Freeland*, 562 F.2d 383 (6th Cir.), *cert. denied*, 434 U.S. 957, 98 S.Ct. 484, 54 L.Ed.2d 315 (1977).

Accordingly, we determine that there was no violation of appellant's fourth amendment rights; he was therefore not prejudiced by the tax court's evidentiary rulings. Moreover, we have considered appellant's other contentions [3] and find no error in the tax court's disposition of them.

The decision of the United States Tax Court will be affirmed.

---

**3.** Appellant's other contentions included: (1) the tax court erroneously determined deficiencies in appellant's income for each of the years in question by improperly applying the "cash expenditures" method of proof, specifically, the failure of the Commissioner to allege and prove an opening and closing net worth for each of the years and failure to negate appellant's use of a cash hoard should preclude the determination of deficiencies and the fraud penalty; (2) inferences drawn by the tax court against appellant based on his failure to testify at trial constitute an impermissible penalty for the invocation of his constitutional privilege against self-incrimination; (3) the Commissioner failed to prove by clear and convincing evidence that appellant's returns in each of the years in issue were fraudulent with intent to evade tax; and (4) the tax court erred in determining the amount of overpayment by appellant by failing to give him credit for all the monies seized by the Commissioner pursuant to the jeopardy assessment.