GERALD W. AND ELIZABETH R. VALLONE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24111-84.       Filed April 6, 1987.

*Alan Jay Weil* and *Steven S. Davis*, for the petitioners.
*Thomas D. Coker*, for the respondent.

OPINION

WRIGHT, *Judge*: This matter is before the Court on petitioners' motion for summary judgment, or alternatively, for an order suppressing evidence, and respondent's cross-motion for partial summary judgment, each filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[1]

By notice of deficiency dated April 9, 1984, respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes:

| Year | Deficiency | Additions to tax sec. 6653(b)[2] |
|------|------------|----------------------------------|
| 1976 | $181,880 | $91,517 |
| 1977 | 304,353 | 152,177 |
| 1978 | 172,231 | 86,116 |

The issues for our consideration are (1) whether findings of fact and conclusions of law made by the U.S. District Court for the Central District of California pursuant to a summons enforcement proceeding constitute res judicata or collateral estoppel as to the issues raised here; and (2) if not, whether the Commissioner's violation of provisions of his own internal procedures is unconstitutional, thus requiring that the exclusionary rule be applied. For the purpose of our ruling, the parties have submitted copies of petitioners' tax returns, affidavits, extensive memoranda of legal points and authorities, the trial transcripts and pleadings from the District Court proceeding involving summons enforcement,

[1] On Sept. 10, 1986, this Court issued an order for respondent to show cause in writing, on or before Nov. 24, 1986, as to why petitioners' motion of Aug. 27, 1986, should not be granted. Thereafter, respondent timely filed a memorandum in opposition and a cross-motion for partial summary judgment. On Nov. 24, 1986, this Court granted petitioners leave to file a reply to respondent's motion and on Dec. 10, 1986, petitioners submitted a reply memorandum and supporting documents. This case was continued from a trial session of the Court which commenced Feb. 23, 1987, at Los Angeles, California.

[2] All statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in issue. All Rule references, unless otherwise indicated, are to the Tax Court Rules of Practice and Procedure.

the District Court's decision, and copies of checks which are the principal items of contention between the parties.

One preliminary matter must be disposed of before turning our attention to the issues at hand. On December 29, 1986, respondent filed a motion in opposition to petitioners' request that the Court take judicial notice of the District Court's trial transcripts in *United States of America v. Bank of America*, Case No. CV82-3549-Lew, which was filed concurrently with the submission of such transcripts on December 10, 1986. Respondent contends that the transcripts are inadmissible hearsay under rules 801 and 804 of the Federal Rules of Evidence.[3]

Under Rule 121(d), in ruling on a motion for summary judgment, the Court shall consider such evidence as affidavits, and supplemental materials such as answers to interrogatories, depositions, or other acceptable materials. One reason for adoption of the hearsay rule is the unavailability of the declarant. In this case, however, the parties herein were, in effect, participants in the District Court proceeding and respondent had the opportunity to cross-examine petitioners and their witnesses in that proceeding. In our opinion, these transcripts which contain the testimony of petitioners as well as Internal Revenue Sevice personnel taken under oath and with opportunity for cross-examination, are no less reliable or probative than the usual type of evidence submitted by parties seeking summary judgment. Accordingly, we conclude that for the purpose of disposing of the summary judgment motions before us, the transcripts are not inadmissible evidence. Respondent's motion therefore will be denied.

## Background

On July 9, 1980, Internal Revenue Agent Joyce Morrison (formerly known as Joyce Morrison-Hillhouse) was assigned to audit petitioners' 1978 Federal income tax return and in January 1981, Agent Morrison commenced her audit. During the course of examining petitioners' 1978 return, Agent Morrison noticed an expense item with respect to horses

---

[3]The rules of evidence applicable to Tax Court proceedings are the rules applicable in trials without jury in the U.S. District Court for the District of Columbia. These include the Federal Rules of Evidence. Rule 143(a), Tax Court Rules of Practice and Procedure.

that were sold at a loss and determined that such expense should have been deducted in 1977, the year the loss occurred. On February 18, 1981, she sent a "document request" to petitioners' accountant, Mr. Waters (now deceased), requesting information from Kaufman & Broad Homes, Inc. (Kaufman & Broad) (a company for which petitioner Gerald Vallone, doing business as Foothill Plastering Co., had done work as a subcontractor), as to the total moneys paid to petitioners in 1978. Agent Morrison believed verification of gross receipts was necessary in order to have a "quality audit." Because Mr. Vallone had indicated that Kaufman & Broad would not give that information to him, Agent Morrison concluded that she would have to seek that information directly from Kaufman & Broad.

On March 9, 1981, Agent Morrison met with petitioners and petitioners' accountant at the accountant's office to secure an extension of time with respect to the statute of limitations for the principal purpose of adjusting the expense item on petitioners' 1977 income tax return which previously was not under audit. At that time, petitioners were given the option of having their accountant prepare and file an amended return, or having Agent Morrison correct the expense on audit. Agent Morrison indicated to petitioners that she thought her audit of the 1977 return would be fairly limited in that she would likely look only at the payroll deductions and miscellaneous supplies expenses, items also being examined on the 1978 return, and that she did not see anything "unusual" on petitioners' 1977 return. Petitioners signed the first consent to extend the statute of limitations (Form 872 "Consent Fixing Period of Limitation Upon Assessment of Income Tax") on March 10, 1981, which extended the statute of limitations for their 1977 return until October 31, 1981.

On May 29, 1981, Agent Morrison contacted Kaufman & Broad for the first time. Pursuant to her letter of that date, Agent Morrison requested information concerning payments made to petitioners during 1977 and 1978. Further correspondence was necessary to clarify that the checks she sought were made payable to Foothill Plastering Co., and on June 16, 1981, Agent Morrison received copies of the

front sides of these checks from Kaufman & Broad. After reviewing these check copies and finding discrepancies between the amounts of the checks and the income reported on petitioners' returns, Agent Morrison began preparing a fraud referral report directed to the Criminal Investigation Division of the Internal Revenue Service (the IRS) with the recommendation for a criminal fraud investigation of petitioners. Agent Morrison called Mr. Vallone in late June and informed him that she had received copies of the checks. On July 1, 1981, she spoke with Mr. Vallone and asked if he knew any reason for the discrepancies. He was unable to provide any explanation. Pursuant to her telephone conversation, Agent Morrison also requested that petitioners set up an appointment to sign a second consent to extend the statute of limitations for the taxable year 1977. On July 2, 1981, Agent Morrison wrote Kaufman & Broad asking for copies of the reverse sides of checks issued to Foothill Plastering Co. and sent petitioners a copy of that letter, to which she attached a schedule of all checks she had received previously from Kaufman & Broad. On that same day, Agent Morrison submitted her criminal fraud referral report to her supervisor. Subsequently, on July 9, 1981, Agent Morrison met with petitioners at her office and petitioners executed a second consent (Form 872) extending the statute of limitations for their 1977 return until October 31, 1982. At neither time when Agent Morrison secured the extensions did she provide petitioners with a copy of IRS Publication 1035 "Extending the Tax Assessment Period" or inform petitioners of the rights and options of taxpayers as set forth in that publication. Moreover, at the July 9, 1981, meeting, Agent Morrison did not give petitioners *Miranda*-type warnings, nor did she inform them that she had submitted a criminal fraud referral report.[4]

On July 20, 1981, Agent Morrison received copies of the reverse sides of checks issued to Foothill Plastering Co. by Kaufman & Broad from Kaufman & Broad's accounting department.

---

[4]At the time she met with petitioners Agent Morrison did not know whether the referral had been accepted or declined. In late July 1981, Special Agent Hall contacted Agent Morrison to set up an appointment to review the file and Agent Morrison was advised unofficially in August 1981, that the referral had been accepted. The joint investigation began on or about Sept. 3, 1981. No recommendation for criminal prosecution was ever made.

On July 19, 1982, the United States of America and Gloria Hall, Special Agent, Internal Revenue Service, filed in the U.S. District Court, Central District of California (District Court), a petition to enforce IRS summons seeking to invoke the District Court's process for the enforcement of the summonses which were issued for the purpose of obtaining records and testimony concerning petitioners Gerald and Elizabeth Vallone from various financial institutions, petitioners' accountant, and petitioners' attorney of record. Thereafter, the District Court on July 22, 1982, issued an order to show cause why the petition should not be granted.

On September 20, 1982, the District Court entered an order pursuant to stipulation permitting the taxpayers to intervene in the summons enforcement proceeding as real parties in interest. An evidentiary hearing was commenced on November 22, 1982, and was completed on March 11, 1983.

At this hearing, petitioners testified that when they signed the consent to extend the statute of limitations for 1977 they were under the impression that only one item for 1977 needed to be corrected and that Agent Morrison was only going to look into the same items that she had examined on the 1978 return. They also stated that at that time Agent Morrison informed them that she "was ready to wrap up" her audit of their 1978 return, but admitted that they had never been notified officially that the audit for 1978 had been completed. Petitioners further testified that on the two occasions in which Agent Morrison requested an extension she did not inform them that they had the option of refusing to sign the consent, nor did she provide information concerning restricted consents. Petitioners acknowledged that while Agent Morrison had given them the option of having their accountant correct the expense on their 1977 return, petitioners stated that they elected to have Agent Morrison do it because she had assured them it would be a "simple matter." Petitioners verified that they were aware of the February 18, 1981, document request which sought checks issued by Kaufman & Broad, but that this issue was not discussed at the March 9 meeting. Mr. and Mrs. Vallone admitted that prior to signing the second

consent on July 9, 1981, they had received a copy of Agent Morrison's letter to Kaufman & Broad as well as a copy of the schedule of checks. Petitioners testified that Agent Morrison did not mention that she had referred her investigation to the Criminal Investigation Division at the time they signed the second extension, but if she had, they emphasized that they would not have signed the second consent.

On August 3, 1983, the District Court entered judgment in favor of the intervenors (petitioners herein) and denied the IRS's petition for the enforcement of summonses. In its opinion, the District Court determined that the primary purpose of the provisions of the Internal Revenue Manual (I.R.M. or Manual), specifically sections 4541.1(15)[5] and 4565.2 [sic],[6] as well as Publication 1035, were for the protection of the taxpaying public. Further, the District Court observed that the IRS had engaged in an institutional practice of not providing Publication 1035 or explaining its contents when a consent was sought to extend the statute of limitations.[7] While the District Court noted that

---

[5]I.R.M. sec. 4541.1(15) as in effect during 1981 provided that:

"Publication 1035, Extending the Tax Assessment Period, will be furnished to taxpayers concurrently with any written or oral requests for consents. In addition, examiners should give taxpayers a brief explanation of their rights and options when soliciting consents orally."

[6]I.R.M. sec. 4565.2 is merely a title reference. The material that the District Court refers to is in fact found at sec. 4565.21. That section as in effect during 1981 read as follows:

"(1) If, during an examination, an examiner discovers any indications of fraud he/she shall suspend his/her activities at the earliest opportunity without disclosing to the taxpayer, his/her representative or employees, the reason for such suspension. * * * He/she will then prepare a report of his/her findings on Form 2797 (Referral Report for Potential Fraud Cases) for transmission through channels to the Chief, Intelligence Division.

"(2) There may be instances where at the time the examiner first discovers indications of fraud the information is insufficient to complete Form 2797 in all respects. Even so, the examiner will not delay preparing the report, but will complete it to the extent possible."

[7]At the evidentiary hearing in District Court, Agent Morrison testified that at the time she secured the consents from petitioners she was unaware of the IRS Manual provision stating that taxpayers should be given Publication 1035 at the time there is an oral or written request for consents. However, Agent Morrison contended that even if petitioners had requested a restricted consent it would not have been available to them and she would not have agreed to a restricted consent. Michael J. Maynard, a group manager at the IRS, and Agent Morrison's supervisor, testified that in 1981 the general procedure when obtaining consents from taxpayers was to provide them information orally and then if the taxpayer requested further information, a publication, such as Publication 556 "Examination of Returns, Appeal Rights, and Claims for Refund," would be provided. He indicated that during 1981, he was not aware of Publication 1035. Mr. Maynard also indicated that the IRS's customary practice, once a fraud referral report had been submitted, was to suspend examination and cease contact with a taxpayer. He pointed out, however, that the exception to this rule applied where it was necessary for an agent to secure an extension of time in order to protect the civil liability. Stressing that he had given Agent Morrison permission to seek extensions on both occasions,

petitioners were aware, prior to the March 9, 1981, meeting, that Agent Morrison sought information from Kaufman & Broad, the District Court nevertheless wrote: "that information [the only alleged evidence of fraud] was obtained as a direct result of the taxpayer's execution of the consent forms requested by Agent Morrison as a precautionary measure." Finding that the IRS had violated its regulations and had procured petitioners' trust and cooperation, as well as having received information to be used against petitioners "through the concealment and misrepresentation of material facts," the District Court concluded that the denial of the summonses was warranted because enforcement would otherwise constitute an abuse of the Court's process.

An appeal of the District Court's judgment was filed with the Court of Appeals for the Ninth Circuit, but was later dismissed pursuant to a stipulation by the parties.

### The Summary Judgment Issues

Under Rule 121, the party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that he is entitled to judgment as a matter of law. *Adickes v. Kress & Co.*, 398 U.S. 144, 157 (1970); *Gulfstream Land & Development Corp. v. Commissioner*, 71 T.C. 587, 596 (1979); *Shiosaki v. Commissioner*, 61 T.C. 861, 863 (1974). The facts relied on by the moving party must be viewed in the light most favorable to the opposing party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. Kress & Co., supra; United States v. Diebold*, 369 U.S. 654, 655 (1962); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982). The party opposing summary judgment may not simply rest upon mere allegations or denials in his pleadings; his response by affidavit or otherwise must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). Because the granting of a summary judgment motion decides an issue without opportunity for trial, we are mindful that such action is a drastic remedy to be cautiously invoked and used sparingly.

---

Mr. Maynard stated that it was his belief that the prohibition against contacting taxpayers applied to requests for information but not to consents to extend the statute of limitations.

*Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982). Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present so that the remedy can serve its salutary purpose in avoiding a useless, expensive, and time-consuming trial where there is no genuine, material fact issue to be tried. *Lyons v. Board of Education of Charleston*, 523 F.2d 340, 347 (8th Cir. 1975). Whether or not facts are material, of course, depends upon the context in which they are raised, and the legal issues which exist between the parties.

Petitioners seek to have this Court summarily adjudicate certain issues as settled and established based on the related doctrines of res judicata and of collateral estoppel or, in the alternative, issue an order suppressing certain evidence. Petitioners contend that respondent's notice of deficiency is based upon certain checks obtained by the Commissioner from Kaufman & Broad and that these checks were the subject of a prior adjudication between the same parties in the U.S. District Court for the Central District of California. Specifically, petitioners claim that the District Court determined that respondent had wrongfully obtained such checks and therefore argue that respondent may not use the Kaufman & Broad checks as evidence in this proceeding. Accordingly, petitioners assert that this Court should grant summary judgment with respect to paragraph 4(a)[8] of their petition because, without the use of those checks, the Commissioner cannot raise any issue of material fact with respect to that paragraph.

Res judicata is a judicial doctrine that applies only to the same cause of action arising between the same parties. Simply stated, under this doctrine "a judgment on the merits in a prior suit bars a second suit involving the parties or their privies based on the same cause of action."

---

[8]Par. 4(a) of the petition in this proceeding denies the Commissioner's allegation that petitioners failed to report income from Kaufman & Broad for taxable years 1976 through 1978:

"The Commissioner erred in his determination that the Petitioners received income from Kaufman and Broad which was not reported on Petitioners' returns, in the amounts of $280,030.00 for the taxable year ended December 31, 1976, in the amount of $448,216.00 for the taxable year ended December 31, 1977 and in the amount of $233,178.00 for the taxable year ended December 31, 1978, on the basis that the Petitioners have failed to establish that these amounts are excludable from gross income under provisions of the Internal Revenue Code."

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 5 (1979); accord *Montana v. United States*, 440 U.S. 147 (1979). See also *Shaheen v. Commissioner*, 62 T.C. 359, 362 (1974); *Fairmont Aluminium Co. v. Commissioner*, 22 T.C. 1377, 1381 (1954).

Collateral estoppel, on the other hand, precludes litigation of any issue of fact or law that is actually litigated and necessarily determined by a valid and final judgment. *Montana v. United States, supra* at 153; see 1 Restatement, Judgments 2d, sec. 27 (1982). Like res judicata, the purpose of collateral estoppel is to avoid repetitious litigation of issues between the same parties or their privies. See *Jaggard v. Commissioner*, 76 T.C. 222, 223 (1981). The doctrine, however, "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Commissioner v. Sunnen*, 333 U.S. 591, 599-600 (1948); see *Cromwell v. County of Sac*, 94 U.S. 351, 353 (1876). The burden of pleading and proving that the matter raised in the second proceeding is identical with that decided in the first proceeding rests upon the party asserting the estoppel. *Houng Tang v. Aetna Life Insurance Co.*, 523 F.2d 811, 813 (9th Cir. 1975). See also *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1979).

In the instant case, petitioners' reliance on the doctrine of res judicata is misplaced. The District Court proceeding was a summons enforcement action wherein the Commissioner sought to have that court enforce compliance with certain IRS summonses. Thus, the District Court was called upon to review the enforceability of those summonses. The instant proceeding, however, is an action for the redetermination of petitioners' tax liability. These two proceedings are based on different causes of action, raise different issues, and the moving parties seek different forms of relief in each proceeding.

Similarly, petitioners' arguments with respect to collateral estoppel must also be dismissed. In support of their argument, petitioners assert that the District Court, as a part of its findings, actually and necessarily determined that respondent had engaged in illegal conduct, thus

estopping respondent from litigating that issue here. Specifically, they contend that the District Court determined that respondent obtained the Kaufman & Broad checks illegally by violating regulations intended for the protection of taxpayers and that the IRS made misrepresentations and concealed material facts.

We conclude that petitioners' arguments miss the heart of the matter presently before us. First, the issue of whether evidence is admissible in this civil tax proceeding is not identical to that raised in the prior proceeding. As we noted earlier, the District Court proceeding was a summons enforcement action wherein the Commissioner sought to obtain records concerning the petitioners from various banks, financial institutions, the petitioners' accountant, and petitioners' attorney of record. The issue in that proceeding was whether the various summonses were enforceable.

Certain requirements must be met before an IRS summons can be enforced. *United States v. Powell*, 379 U.S. 48 (1964). Specifically, under the standards enunciated in *Powell*, the Commissioner must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry is relevant to that purpose, that the information sought is not already in the Commissioner's possession, and that the administrative steps required by the Code have been followed. It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. See *United States v. Powell, supra* at 255. The Supreme Court further clarified the limitations on the enforceability of an IRS summons in *United States v. LaSalle National Bank*, 437 U.S. 298 (1978), wherein the Court held that the IRS must use its summons authority in good faith pursuit of congressionally authorized purposes. Thus, the issue before the District Court was whether the showings required by *Powell* and its progeny were met. Moreover, the District Court was called upon to review and enforce summonses issued to parties other than Kaufman & Broad. Whether the Government met the necessary showing for summons enforcement cannot be equated with the question of whether evidence

obtained by the Government is admissible in a civil tax proceeding.

Secondly, the issue presently before this Court was not actually raised and litigated in the prior proceeding. The requirement under the law of collateral estoppel that an issue be actually litigated is generally satisfied if the parties to the original action disputed the issue and the finder of fact resolved it. See 1 Restatement, Judgments 2d, sec. 27, comment d (1980). Inasmuch as a summons enforcement proceeding is a limited one at the purely investigative stage of governmental activity, the question with respect to the admissibility of the checks obtained by the respondent from Kaufman & Broad was never placed in issue. Nor did the District Court make any ruling on the admissibility of these checks. However, even if the District Court had ruled on the use of the checks, such findings would have been outside the scope of the proceeding and nonessential to the judgment.[9] Finally, the District Court did not, as a part of its findings, actually and necessarily determine that respondent's conduct rose to a level of a constitutional violation requiring suppression. Because the parties never put the suppression issue in dispute, the District Court did not, and could not at that stage, properly rule on the suppression issue. Inasmuch as the Commissioner has not had a full opportunity to litigate the issue which petitioners now attempt to preclude, the doctrine of collateral estoppel is not applicable in this proceeding.[10] Accordingly, there remain genuine issues of material fact before the Court, and that part of petitioners' motion that moves for summary judgment will be denied.

---

[9]Questions of suppression are not to be considered until the time when proceedings arise in which the Government seeks to use the evidence in question. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359 (1977), and cases cited therein.

[10]Petitioners, who rely on *Graham v. Commissioner*, 76 T.C. 853 (1981), overlook the fact that this Court applied collateral estoppel in that case because "the issues in the case are precisely the same as is actually and necessarily determined in the District Court." In *Graham*, this Court determined that respondent was collaterally estopped from contending that certain payments received by the taxpayers should be treated as ordinary income, rather than capital gain. Our reasoning was based on the fact that the U.S. District Court for the Northern District of Texas, pursuant to a refund suit, had previously determined that such proceeds were capital gain and further because the respondent, as a party to the refund suit, had a full and fair opportunity to litigate its position in the prior proceeding. Unlike petitioners here, the taxpayers in *Graham* met their burden of showing that the issue in the two proceedings were identical and that such issues were actually litigated and essential to the rendering of the prior judgment.

## The Motion To Supress Evidence

We now must decide (1) whether the violation of provisions contained in the Internal Revenue Manual amount to unconstitutional conduct, and (2) whether suppression of evidence is warranted under the circumstances involved here. It is in this context that respondent has countered with a motion for partial summary judgment asking that the checks obtained by respondent from Kaufman & Broad be held admissible to prove that petitioners had unreported income and further to establish fraud.

It has long been recognized that this Court has authority to inquire into the question of admissibility of evidence. *Kluger v. Commissioner*, 83 T.C. 309, 315 (1984), and cases cited therein. Moreover,

determinations regarding the admissibility of evidence in proceedings before this Court are an inherent power incident to the Court's duty to redetermine proposed income tax deficiencies. The fact that a determination of admissibility of evidence involves an inquiry into the propriety of actions of other courts, or other branches of Government, has never been thought to deprive this or any other Federal court of the authority to exercise that power, * * * [*Kluger v. Commissioner, supra* at 316.]

We would point out, however, that we are not called upon to review the correctness of the District Court's determination with respect to the denial of the petition to enforce the summonses.

As a general rule, this Court will not look behind a deficiency notice to examine the evidence used, the propriety of the Commissioner's motive, or the administrative policy or procedure in making his determinations.[11] *Jackson v. Commissioner*, 73 T.C. 394 (1979); *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974); *Human Engineering Institute v. Commissioner*, 61 T.C. 61, 66 (1973), appeal dismissed (6th Cir., April 1, 1975), cert. denied 423 U.S. 860 (1975). In seeking suppression of the Kaufman & Broad checks, petitioners attempt to avoid this well-established rule by asserting that the IRS violated its

---

[11]Substantial evidence of unconstitutional conduct by respondent in determining the deficiency does constitute an exception to this rule. However, even in instances where we have discovered evidence of unconstitutional conduct underlying a deficiency notice, we have refused to declare the deficiency notice itself null and void as a sanction for respondent's behavior. *Graham v. Commissioner*, 82 T.C. 299, 309 (1984), and cases cited therein, affd. 770 F.2d 381 (3d Cir. 1985).

own internal procedures as set forth in the Internal Revenue Manual. They argue that evidence must be suppressed where it is obtained as a result of an agency's violating its own regulations where the violations substantially affected the injured party's rights or conduct.

We were faced with a similar argument in *Riland v. Commissioner*, 79 T.C. 185 (1982). In that case, the taxpayers contended that the IRS is bound by the procedures it adopts and its failure to follow its own procedures as set out in the Internal Revenue Manual is a per se violation of due process. This Court, citing *United States v. Caceres*, 440 U.S. 741, 755-756 (1979), pointed out that not all violations of an agency's internal procedures rise to the level of a constitutional violation. *Riland v. Commissioner, supra* at 201.

In *Caceres*, the Supreme Court declined to apply the exclusionary rule, noting that the IRS rules were neither required by the Constitution nor any statute and that the defendant could not reasonably contend that he relied on the regulation or that its breach had any detrimental effect on his conduct. More importantly, in emphasizing that a "rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures," the Court stated:

In the long run, it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration of the kind displayed by this record, than either to have no rules except those mandated by statute or to have them framed in a mere precatory form. [440 U.S. at 755-756.]

The I.R.M. sections in question in the present case were neither required by the Constitution nor by statute. Because "Their purpose is to govern the internal affairs of the [IRS]," the procedures of the IRS do not have the force or effect of law. *Foxman v. Renison*, 625 F.2d 429, 432 (2d Cir. 1980); *Einhorn v. DeWitt*, 618 F.2d 347, 350 (6th Cir. 1980); *First Federal Savings & Loan Association of Pittsburgh v. Goldman*, 644 F. Supp. 101 (W.D. Pa. 1986). As such, I.R.M. requirements are necessarily merely directory and not mandatory and noncompliance does not render the action of the respondent invalid. *United States v. Horne*,

714 F.2d 206, 207 (1st Cir. 1983).[12] Courts have generally said that the Manual is not for the protection of taxpayers. See, e.g., *United States v. Mapp*, 561 F.2d 685 (7th Cir. 1977); *United States v. Lockyer*, 448 F.2d 417 (10th Cir. 1971); *United States v. Matis*, 476 F. Supp. 1287 (S.D. N.Y. 1979). See also *United States v. Kaatz*, 705 F.2d 1237, 1243 (10th Cir. 1983) (violation of the [Audit Technique] Handbook does not prove a violation of any constitutional right).

Moreover, we cannot conclude that the Commissioner's failure to follow his own regulations materially affected petitioners' conduct to their substantial detriment. First, with respect to the failure of the IRS to provide Publication 1035 when seeking to extend the statute of limitations, we note that discussions surrounding the first extension took place at petitioners' accountant's office and in his presence. In our opinion, petitioners could have reasonably looked to their accountant for information concerning any consequences stemming from signing an extension, as well for advice as to the probable scope of the examination.[13] Petitioners were not compelled or under duress to sign such extension, as Agent Morrison gave them the option of filing an amended return rather than opening up the 1977 year. Finally, despite the fact that petitioners testified that they did not realize that they could have refused to sign the consents, knowledge of a right to refuse, while a factor in determining "voluntariness," is not a prerequisite to establishing voluntary consent. See *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

While Agent Morrison did not inform petitioners that she intended to request information from Kaufman & Broad for 1977, we do not find this "omission" to be a misrepresentation of a material fact. It is well established that agents are expected to pursue their examination to a point where they can conclude, with reasonable certainty, that all items necessary for a substantially proper determination of the tax liability have been considered. Further, in March 1981,

[12]See *Bridges v. Commissioner*, T.C. Memo. 1983-763; *Tucker v. Commissioner*, T.C. Memo. 1983-210.

[13]I.R.M. sec. 4541.1(19), formerly sec. 4541.1(15), currently provides that Publication 1035 need not be provided where the taxpayer has an accountant or tax attorney, with whom the examiner is conducting the examination, as such persons are expected to be thoroughly familiar with IRS administrative provisions and options available to a taxpayer.

petitioners were aware that Agent Morrison had previously sought information concerning receipts from Kaufman & Broad. Prior to executing the second extension, they had received a copy of the schedule of checks for 1977 and 1978, as well as a copy of Agent Morrison's letter of July 2, 1981, to Kaufman & Broad.

With respect to Agent Morrison's failure to give *Miranda*-type warnings on July 9, 1981, we emphasize that petitioners were not being "investigated" for criminal tax fraud at that time. Moreover, the Supreme Court, as well as various courts of appeals, have stated that *Miranda* warnings need not be given in every instance to targets of criminal tax investigations. *United States v. Beckwith*, 425 U.S. 341 (1976); *Singleton v. Commissioner*, 65 T.C. 1123, 1151-1152 n. 6 (1976), affd. on another ground 606 F.2d 50 (3d Cir. 1979), and cases cited therein. Additionally, the meetings between petitioners herein and the revenue agent cannot be characterized as custodial interrogations. This Court has held that the failure to give such warnings will not require suppression in a subsequent civil fraud case even if suppression were to be required in a criminal case.[14] *Broad v. Commissioner*, 65 T.C. 948 (1976). See also *Riland v. Commissioner*, *supra* at 202 n. 9, and cases cited therein.

We now turn our attention to petitioners' arguments that information obtained through IRS deception violates the Fourth and Fifth Amendments and therefore must be suppressed.[15] In support of these arguments, they cite numerous cases which hold that a consent search is unreasonable under the Fourth Amendment if the consent is

[14]We note that the IRS requires that its special agents give so-called "News Release" warnings to prospective targets of criminal investigations. In the instant proceeding, when Special Agent Gloria Hall met with petitioners in their home, she identified herself and gave them the required warnings.

[15]In general, the Fifth Amendment may not be claimed in civil tax cases, even when a civil fraud penalty is involved, so long as there is no reasonable apprehension of criminal prosecution. *Harper v. Commissioner*, 54 T.C. 1121 (1971). The civil fraud penalty in tax cases has been held not to be criminal or quasi-criminal in nature. *Helvering v. Mitchell*, 303 U.S. 391 (1938). See also *Fisher v. United States*, 425 U.S. 391 (1976) (Fifth Amendment did not require suppression of taxpayer's personal business records obtained from lawyer pursuant to summons); *Couch v. United States*, 409 U.S. 322 (1973) (summons served on a taxpayer's accountant requiring him to produce taxpayer's personal business records in his possession did not violate taxpayer's Fifth Amendment rights); *Alexander v. Commissioner*, 56 T.C. 710 (1971), affd. 476 F.2d 974 (5th Cir. 1973) (privilege against self-incrimination did not apply to seizure of records, as opposed to compulsion of testimony, or prevent admission in civil proceeding).

induced by the deceit, trickery, or misrepresentation of the internal revenue agent.[16] To prevail on this point the taxpayer must show clear and convincing evidence of fraud or deceit on the part of the IRS. *United States v. Serlin*, 707 F.2d 953 (7th Cir. 1983); *United States v. Marra*, 481 F.2d 1196 (6th Cir. 1973); *United States v. Prudden*, 424 F.2d 1021 (5th Cir. 1970).

First and foremost, a person who claims a violation of Fourth Amendment rights must have standing to assert the unlawfulness of the search and seizure; that is, the movant must have a privacy interest in the object of the illegal search and seizure. *Alderman v. United States*, 394 U.S. 165, 171-172 (1969). The Supreme Court has stated that a "depositor has no expectation of privacy and thus no protectable Fourth Amendment interest in copies of checks and deposit slips retained by his bank." *United States v. Payner*, 447 U.S. 727, 732 (1980), citing *United States v. Miller*, 425 U.S. 435 (1976). Thus, an expectation of privacy does not exist where the records are of commercial transactions between the third person and the taxpayer which the third person is likely to keep. See also *Donaldson v. United States*, 400 U.S. 517 (1971) (a taxpayer who does not own records of his employer or have a privilege-type interest in them cannot move to suppress evidence from them if they are turned over voluntarily to the IRS); *Mauroni v. United States*, an unreported case (N.D. Cal. 1984, 54 AFTR 2d 84-5833, 84-2 USTC par. 9705) (taxpayer had no expectation of privacy in records at title companies because documents were used for commercial transactions and information was conveyed during regular course of business); *United States v. Manufacturers Hanover Trust Co.*, 485 F. Supp. 653 (S.D.N.Y. 1979) (taxpayer had no standing to object to third party's production of records even where identity of third person was obtained by deceit). Here, petitioners cannot reasonably maintain that they have a protectable constitutional interest under the Fourth Amendment in copies of

[16]*United States v. Robson*, 477 F.2d 13, 17 (9th Cir. 1973); accord *Spahr v. United States*, 409 F.2d 1303, 1306 (9th Cir. 1969). See also *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977) (evidence suppressed where IRS special agent failed to acknowledge that a criminal investigation was underway when taxpayer asked); *Vander Linden v. United States*, 502 F. Supp. 693 (S.D. Iowa 1980) (records produced voluntarily by taxpayer were suppressed where special agent did not inform taxpayer of the true purpose of the investigation but led taxpayer to believe special agent was merely conducting a civil audit).

checks issued and retained by Kaufman & Broad. Further, in the instant case there was no search or seizure of the checks because Kaufman & Broad voluntarily supplied them during the course of a civil tax audit.

Even assuming that petitioners have standing under the Fourth Amendment, however, we do not find on these facts that Agent Morrison obtained the consents by fraud or deceit or that she made material misrepresentations. First, courts have consistently held that the failure of an IRS agent to warn a taxpayer that an audit may have potential criminal ramifications does not render a search unreasonable. *United States v. Robson*, 477 F.2d 13 (9th Cir. 1973). Thus, when a routine tax audit has begun, the agent may obtain evidence of misreporting without warning the taxpayer of the changing direction of an examination. *United States v. Sclafani*, 265 F.2d 408 (2d Cir. 1959), cert. denied 360 U.S. 918 (1959). For, as the Court of Appeals succinctly stated in *Sclafani*:

A "routine" tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the Government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission. [265 F.2d at 414-415.]

See also *United States v. Squeri*, 398 F.2d 785, 788 (2d Cir. 1968) (audit of returns gives notice that there is possibility of criminal prosecution regardless whether the agents contemplate civil or criminal action when they speak to taxpayer).

Secondly, our review of the cases cited by petitioner, as well as those uncovered by our own research, suggests that suppression is an appropriate remedy only for fairly serious affirmative misrepresentations. No case holds that an IRS agent breaches a constitutional duty when he or she obtains information merely by failing to state specifically that he is conducting a criminal investigation. In fact, in several cases courts have refused to suppress evidence when IRS agents made no affirmative misrepresentations but simply failed to disclose information. *United States v. Irvine*, 699 F.2d 43, 46 (1st Cir. 1983), and cases cited therein. See also *United States v. Serlin, supra* at 956 ("Simple failure to inform [a

taxpayer] that he was the subject of an investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless [taxpayer] inquired about the nature of the investigation and the agent's failure to respond was intended to mislead"); *United States v. Jaskiewicz*, 433 F.2d 415 (3d Cir. 1970) ("There [is] no affirmative duty on the part of the Government to disclose to [the taxpayer] the extent and nature of the investigation"). In this case Agent Morrison did not make any promises nor could or did she state affirmatively that a criminal investigation would or would not be forthcoming. Given these facts, there is no reason to believe that the Constitution forbids the omissions at issue here.

Although we can find no cases identical to the case at bar, it appears that the reason for requiring an agent to cease contact with the taxpayer after finding firm indications of fraud is to protect against evidence being gathered for use at a subsequent criminal trial under the guise of a civil audit. This premise is bolstered by I.R.M. sections 9322.1(1) and 9322.5 which generally provide that once there are indications of fraud, no delay should occur in preparing a fraud referral report. If such delay occurs, and the agent continues investigating, suppression of evidence at the criminal trial may be appropriate. See *United States v. Touissant*, 456 F. Supp. 1069 (S.D. Tex. 1978) (revenue agent continued his examination for 6 months after firm indications of fraud were found). But see *United States v. Kaatz*, *supra*. In the instant proceeding, however, the agent contacted petitioners and requested that they sign a consent, then promptly submitted a fraud referral report. Approximately 1 week later, petitioners went to the agent's office and signed a consent further extending the statute of limitations until October 31, 1982. Despite this action, we do not believe it is fatal to the proceeding herein, because the agent secured no further incriminating information from petitioners at that time, and did not impermissibly extend the examination. Specifically, Agent Morrison had already received copies of the fronts of the checks from Kaufman & Broad. Moreover, we note that Agent Morrison requested the reverse sides of the checks at the time she submitted her report, and petitioners had received a copy of that

request and accompanying schedule of checks prior to July 9, 1981. Under these circumstances we cannot equate the signing of the second consent as contact where detrimental information was obtained.

Where a taxpayer has no privacy interest in the object of the alleged illegal search and seizure, this Court has recognized that evidence may be excluded on due process grounds under the Fifth Amendment where it has been seized from an individual in a manner so outrageous that it shocks the Court's conscience. Similarly, a court may invoke its supervisory powers to exclude evidence seized "in a manner inconsistent with American standards of justice." *Proesel v. Commissioner*, 73 T.C. 600, 607 (1979) (citations omitted). In asking this Court to suppress evidence petitioners argue essentially that the checks voluntarily given to the revenue agent by Kaufman & Broad during the course of the disputed proceedings were illegally obtained because the IRS illegally obtained the consent for the extension of the statute of limitations for the year 1977. Petitioners therefore contend that the "fruit of the poisonous tree" doctrine prohibits the respondent from using the checks to prove that petitioners are liable for deficiencies and additions to tax.[17] However, where the Government learns of evidence "from an independent source" or where the challenged evidence has "become so attenuated as to dissipate the taint," the exclusionary rule is not applicable. See *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920); *Nardone v. United States*, 308 U.S. 338, 341 (1939); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *Singleton v. Commissioner, supra* at 1148. In addition, the argument that evidence is tainted merely because it would not have been discovered but for the illegal activity has been rejected in numerous cases. Specifically, the Supreme Court stated "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun*

---

[17]The Ninth Circuit, the court to which an appeal herein lies, applies this doctrine by determining whether "anything seized illegally, or any leads gained from the illegal activity, tend significantly to direct the investigation toward the specific evidence sought to be suppressed." *United States v. Taheri*, 648 F.2d 598, 600 (9th Cir. 1981). See *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert denied 404 U.S. 940 (1971).

*v. United States*, *supra* at 487-488. The Supreme Court affirmed this position in *United States v. Ceccolini*, 435 U.S. 268, 276 (1978):

In situations where the exclusionary rule is plainly applicable, we have declined to adopt a "per se or but for rule" that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with * * * [the illegal activity]. * * *

See also *United States v. Brandon*, 467 F.2d 1008 (9th Cir. 1972); *United States v. Fike*, 449 F.2d 191 (5th Cir. 1971); *United States v. Bacall*, 443 F.2d 1050 (9th Cir. 1971); *United States v. Freeland*, 441 F.2d 855 (2d Cir. 1971). The Seventh Circuit, in *United States v. Carsello*, 578 F.2d 199, 202 (7th Cir. 1978), stated that the Supreme Court further advised that the issue of causation:

cannot be answered on the basis of "causation in the logical sense alone" [*United States v. Ceccolini*, 435 U.S. at 274], but necessarily involves a weighing of the social costs of applying the exclusionary rule against the benefits to be gained therefrom, for the "penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve. [435 U.S. at 279.]"

Even if respondent had violated the law in obtaining petitioners' consent to extend the statute of limitations, he did not violate the law in obtaining the checks from Kaufman & Broad. As we have previously emphasized, those checks were provided to respondent voluntarily, pursuant to respondent's informal request by letter correspondence.

Secondly, we point out that the consents applied to taxable year 1977 only. In the course of auditing petitioners' 1978 return, Agent Morrison clearly was free to seek information from Kaufman & Broad to verify receipts as shown on Schedule C of the 1978 return. In February 1981, she sent petitioners' accountant a document requesting information concerning Kaufman & Broad. Petitioners testified at the summons enforcement proceeding that they were aware that Agent Morrison sought this information. Agent Morrison also testified that she would have gone to Kaufman & Broad for 1978 "in any event." Thus, if petitioners had refused to extend the statute of limitations

for 1977, and checks for 1978 only were obtained, it follows that in light of the circumstances here, the years 1977 and 1976 in all probability would have been subject to examination.[18] Accordingly, we reject petitioners' argument that the Kaufman & Broad checks would not have been obtained "but for" respondent's securing the consents to extend the statute of limitations.

We conclude that there are no grounds for applying the exclusionary rule in the present case. In sum, petitioners have not shown that any of their rights under the Fourth Amendment have been violated. Further, petitioners' due process rights under the Fifth Amendment were not violated since the deficiency notice was based on legally obtained evidence; nor is there any ground for the Court to exercise its supervisory powers to suppress any evidence on which such notice was based. Therefore, as a matter of law, that part of petitioners' motion that moves for an order suppressing evidence will be denied.

That part of respondent's cross-motion for partial summary judgment that moves for a summary determination that the checks obtained from Kaufman & Broad be held admissible will be granted. However, we decline to determine at this time that these checks establish that petitioners' alleged understatements of income were due to fraud with intent to evade taxes. Where the inferences which the party seeks to have drawn deal with questions of motive and intent, summary judgment is particularly inappropriate. Such inferences of fact are to be drawn only at trial.[19] *Espinoza v. Commissioner, supra* at 417 and cases cited

[18]An inference that fraud extended into years allegedly barred by the statute of limitations is sufficient to authorize examinations. *United States v. Ryan*, 320 F.2d 500 (6th Cir. 1963); *Eberhart v. Broadrock Development Co.*, 296 F.2d 685 (6th Cir. 1961). Agent Morrison began her audit of petitioners' 1976 return after the criminal fraud referral report had been accepted.

[19]The filing of false or fraudulent returns with intent to evade tax constitutes an exception to the general 3-year statute of limitations. Sec. 6501(c)(1). However, respondent bears the burden of proof and such proof must be made by clear and convincing evidence. Sec. 7454(a); Rule 142(b); *Schaffer v. Commissioner*, 779 F.2d 849, 857 (2d Cir. 1985); *Akland v. Commissioner*, 767 F.2d 618 (9th Cir. 1985), affg. a Memorandum Opinion of this Court. We note that if respondent succeeds in establishing fraud, the 3-year statute of limitations does not apply, and petitioners' contentions concerning the validity of the consents to extend the statute of limitations would therefore be moot.

Similarly, where respondent alternatively alleges, as he does here, that the 6-year statute of limitations provided for in sec. 6501(e)(1)(A) applies, he has the burden of proving such omission. See *Bardwell v. Commissioner*, 38 T.C. 84, 91 affd. without discussion on this point 318 F.2d 786 (10th Cir. 1963).

therein. Because fraud is never presumed, the presence of fraud is a factual question to be determined by an examination of the entire record. *Kotmair v. Commissioner*, 86 T.C. 1253, 1259-60 (1986). Therefore, that part of respondent's cross-motion for partial summary judgment which asks that the Kaufman & Broad checks establish fraud will be denied.

*An appropriate order will be issued.*