ALFRED W. ROYSTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Royster v. Commissioner
Docket No. 13427-83.
United States Tax Court
T.C. Memo 1987-473; 1987 Tax Ct. Memo LEXIS 469; 54 T.C.M. (CCH) 587; T.C.M. (RIA) 87473; September 17, 1987. *469 Petitioner was convicted in a Federal criminal trial of fraud, racketeering, perjury, and conspiracy. Respondent determined deficiencies and fraud additions to tax on account of petitioner's failure to report income from the illegal activities. Petitioner failed to respond to requests for admissions, after having been granted extensions of time to do so. Respondent moved for summary judgment and petitioner submitted a statement and materials in opposition. Held: (1) Respondent has shown that there is no genuine issue as to any material fact; petitioner's statement and materials are inadequate to rebut this showing. Rule 121(d), Tax Court Rules of Practice & Procedure.
(2) Respondent has shown by clear and convincing evidence that petitioner has an underpayment due to fraud for each year in issue. Sec. 6653(b), I.R.C. 1954. (3) Deficiencies determined. Alfred W. Royster, pro se. Russell F. Kurdys, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: The instant case is before us on respondent's motion under Rule 121(a)[1] *470 for summary judgment as to the deficiencies and additions to tax. Respondent determined deficiencies in Federal individual income tax and additions to tax under section 6653(b)[2] (fraud) as follows: [3]
Year
Deficiency
Addition to Tax Sec. 6653(b)
1978
$ 11,193
$ 5,596.50
1979
2,717   1,358.50   The issue for decision is whether respondent is entitled to summary judgment that petitioner is liable for the foregoing deficiencies and additions to tax. [4]
When the petition was filed in the instant case, petitioner resided in Connellsville, Pennsylvania. On September 6, 1985, respondent served on petitioner a request for admissions, with attached exhibits. On September 9, 1985, respondent's request was filed with the Court pursuant to Rule 90. On November 14, 1985, respondent served on petitioner a second request for admissions, with an attached exhibit.[5] On November *471 19, 1985, respondent's request was filed with the Court pursuant to Rule 90. The Court, through various orders, extended until February 19, 1986, petitioner's time to reply to both requests for admissions. Petitioner failed to respond to these requests, and so these requested admissions are deemed admitted and are conclusively established for purposes of the instant case. Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (CA5 1978); Rule 90(f). Petitioner and his wife filed joint income tax returns for 1978 and 1979 on which thy reported income tax liability as shown in table 1. Table 1 Item
1978
1979
Wages and salaries
[6] *472 $ 28,337 [7] $ 20,990.47 Interest Income
25 110.00 [8] Schedule C (7,005)
(5,060.00)
Other Ordinary Losses
[9] (833)
-0-
Adjusted Gross Income     $ 20,524 $ 16,040.47 Income Tax Liability
[10] $ 2,849 $ 1,193.00  Allegheny Power Systems, Inc. (hereinafter sometimes referred to as "Allegheny"), through wholly owned subsidiaries, was principally engaged in generating electric power for customers in Pennsylvania, Maryland, Virginia, West Virginia, and Ohio. One of Allegheny's wholly owned subsidiaries was West Penn. West Penn was the majority owner of Hatfield's Ferry Power Station (hereinafter *473 sometimes referred to as "Hatfield's Ferry"), an electric power generator plant, and had sole responsibility of the operation of Hatfield's Ferry. West Penn bought coal to be burned in the process of generating electricity at Hatfield's Ferry. West Penn set quality standards for the coal it bought and established a standard procedure for testing the quality of this coal. Petitioner was employed by West Penn and was assigned to the barge unloading area of Hatfield's Ferry. From about November of 1977 until about July of 1979, petitioner participated in devising and executing a scheme to defraud West Penn. Petitioner's part in the scheme was to switch coal samples so that West Penn would pay for a higher quality of coal than was being supplied. Because of his actions as part of this scheme, petitioner was convicted, in the Federal district court for the Western District of Pennsylvania, of violations of title 18 U.S.C. sections 1341 (frauds and swindles), 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises), 1623 (false declarations before grand jury or court), and 371 (conspiracy to commit offense or to defraud United States), and sentenced *474 to concurrent 3-year prison terms for each of the 16 counts on which he was convicted. The indictment was issued by the grand jury on January 13, 1981; the jury trial was held on June 3, 1981; petitioner was sentenced on July 17, 1981. Petitioner appealed his conviction; the Court of Appeals for the Third Circuit entered an order of affirmance on May 11, 1982. The Supreme Court denied the petition for certiorari on October 4, 1982. For his services in this scheme, petitioner received payments on the dates and in the amounts shown in table 2. Table 2 Date
Amount
April 29, 1978
$ 1,500
May 13, 1978
1,500
June 8, 1978
1,500
June 15, 1978
1,500
June 16, 1978
1,500
July 21, 1978
1,500
August 3, 1978
1,500
August 10, 1978
1,500
August 15, 1978
4,000
August 22, 1978
2,000
September 21, 1978
1,750
October, 1978   2,000
October 17, 1978
1,500
November 8, 1978
2,000
December 22, 1978
4,000
1978 total
29,250
January 19, 1979
$ 2,500
February 2, 1979
1,500
February 27, 1979
2,750
March 10, 1979
2,000
April 27, 1979
3,000
1979 total
$ 11,750 The amounts shown in table 2 constitute income to petitioner in the years he received them, and are subject to income tax for these years. Petitioner knew that these amounts constituted income subject *475 to tax, but he nevertheless did not report any of these amounts on his tax returns. As the result of petitioner's failure to report the foregoing payments on his tax returns, petitioner underpaid his income tax for 1978 in the amount of $ 11,193 and underpaid his income tax for 1979 in the amount of $ 2,717. All of petitioner's omissions from income and underpayments of income tax for 1978 and 1979 were due to fraud. Respondent contends that the matters that petitioner is deemed to have admitted (because of petitioner's failure to respond to the requests for admission) are sufficient to "conclusively establish the amounts of the deficiencies for the years 1978 and 1979, and that part of the underpayment of tax for each of those years is due to fraud." Petitioner concedes that he received $ 2,000 in 1979 and "is willing to pay taxes on that amount and that amount only." Petitioner admits that he was convicted, but maintains that he was innocent. We agree with respondent. Summary judgment is a device used to expedite litigation; it is intended to avoid unnecessary and expensive trials. However, it is not a substitute for trial; it should not be used to resolve disputes over factual *476 issues. Cox v. American Fidelity & Casualty Co.,249 F.2d 616, 618 (CA9 1957); Vallone v. Commissioner,88 T.C. 794, 801 (1987). A motion for summary judgment is to be granted if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Since the effect of granting a motion for summary judgment is to decide the case against a party without allowing that party an opportunity for a trial, the motion should be "cautiously invoked" and granted only after a careful consideration of the case. Associated Press v. United States,326 U.S. 1, 6 (1945); Cox v. American Fidelity & Casualty Co, supra;Vallone v. Commissioner, supra.Respondent, as the moving party, has the burden of showing the absence of a genuine issue as to any material fact, an for these purposes, the material lodged by both sides must be viewed in the light most favorable to the opposing party; that is, all doubts as to the existence of an issue of material fact must be resolved against the movant. E.g., Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Dreher v. Sielaff,636 F.2d 1141, 1143 n. 4 (CA7 1980); Vallone v. Commissioner,88 T.C. at 801. *477 In considering a motion for summary judgment, we are to take into account "the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any". Rule 121(b). Respondent relies on the deemed admissions and the exhibits attached thereto. The deemed admissions, summarized above, describe in great detail petitioner's role in the scheme to defraud West Penn. These deemed admissions are consistent with the indictment counts of which petitioner was convicted. [11]
Petitioner has submitted a response with two attachments. Attached as Exhibit A is a brief extract (30 lines) of a colloquy between the judge who presided at the criminal trial, and the attorney representing a codefendant of petitioner in that trial. The colloquy took place at the sentencing. Evidently, the Government had included in the presentence report a statement as to the dollar magnitude of the fraud. The codefendant's *478 attorney objected that that magnitude had not been proven. The judge stated as follows: THE COURT: Well, I agree with you that the monetary extent of the fraud was not proven. And so, I don't think that we ought to get into whether it was more or less than any certain figure. And I am instructing the Probation Department to amend the presentence report to indicate that there was no proof of monetary extent of the fraud. Attached as Exhibit B to petitioner's response is a United States Parole Commission Initial Hearing Summary Format. This document states, in pertinent part, as follows: PRESENT OFFENSE: (a) The prisoner was convicted of Mail Fraud; Perjury; Conspiracy; Interstate Transportation i Aiding of Racketeering. (b) The file material indicates that the offense behavior involved our subject working as an employee of the West Penn Power Company as a heavy equipment operator who filled in occasionally as a coal unloader whose job it was to take samples of coal which the West Penn Power Company purchased from the Suncrest Company. Inferior grades of coal were in fact sold to the West Penn Power Company, however, the quality coal samples were switched at the unloading docks *479 and thereby the West Penn Power Company was paying for high grade premium coal when in fact they were receiving inferior quality coal. According to the PSI, it is noted that profits in excess of $ 2,000,000.00 were realized by the Suncrest Corporation. However, it is also noted in the PSI on page 15 that the sentencing judge indicated no actual dollar amount was established by the prosecution and the U.S. Attorney reiterates that no actual dollar amount was established. The presentence investigation further indicates that Mr. Royster received some $ 41,000.00 in bribes for his participation in the coal sample switching scheme. (c) The prisoner contests the description of the offense behavior stating that he never did receive any bribes nor was he involved in any coal switching behavior. He readily admits he was found guilty by jury trial but continues to maintain his position that he was not involved. (d) The panel rates the offense behavior as category three severity finding that it involved the acceptance of bribes by a nongovernmental official in excess of $ 20,000.00 and perjury. FORM 792/A0235/A0337: The form 792 is in file and indicates that the only evidence established *480 was that Royster was paid $ 2,000.00 in March, 1979, for his participation in the fraud scheme. Additionally, the U.S. Attorney points out that subject refused to cooperate, lied, and was convicted of perjury in Grand Jury appearances. * * * EVALUATION: (a) The applicable guideline range is 10-14 months. (b) The panel is of the opinion that this offense severity is rightfully categorized as category three because it involved the acceptance of bribes by nongovernment official. We note specifically that the sentencing judge and the U.S. Attorney indicated there was never any actual dollar amount established on the amount of fraud involved. This panel views the subject's role in the scheme as an individual who was accepting bribes for his actions. We do not see him as a prime mover in the conspiracy and therefore have placed him into the category three area. We note he is doing a regular adult sentence and has an eligibility date after the service of 12 months. Therefore, we are recommending he be paroled effective on his eligibility date. RECOMMENDATION: Parole effective June 3, 1983, after the service of 12 months. As we view petitioner's submissions, they tend to show merely *481 that (1) the dollar magnitude of the fraud was not established in the criminal case, (2) petitioner has been consistent in protesting his innocence, but nevertheless concedes that he received $ 2,000, and (3) petitioner was convicted of mail fraud, perjury, conspiracy, and interstate transportation in aid of racketeering. Rule 121(d) provides, in pertinent part, as follows: RULE 121. SUMMARY JUDGMENT. * * * (d) Form of Affidavits; Further Testimony; Defense Required: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The Court may permit affidavits to be supplemented or opposed by answers to interrogatories, depositions, further affidavits, or other acceptable materials, to the extent that other applicable conditions in these Rules are satisfied for utilizing such procedures. When a motion for summary judgment is made and supported as provided in this Rule, an adverse *482 party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him. Petitioner's submissions are little more than general denials of the sort that Rule 121(d) makes clear are insufficient. Petitioner does not dispute any of the specifics of the various criminal activities that he is deemed to have admitted, and of which he was convicted. Petitioner concedes his convictions, including his conviction of perjury (see rule 609, Fed. R. Evid.). Petitioner does not dispute any of the specifics of the payments that he is deemed to have admitted and that are set forth in one of the counts of which he was convicted. Petitioner is not entitled to a trial merely because of the possibility that an issue of material fact might turn up at the trial. First Nat. Bank v. Cities Service,391 U.S. 253, 289-290 (1968). We conclude that respondent has shown that there is no genuine issue as to any material fact. We proceed to consider whether a decision may be rendered *483 as a matter of law. We proceed to the issue of fraud. When respondent seeks to impose the addition to tax under section 6653(b), [12] he bears the burden of proving by clear and convincing evidence that petitioner has an underpayment, and that some part of this underpayment is due to fraud. Section 7454(a); [13] *484 Rule 142(b); e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The issue of fraud poses a factual question which is to be decided on an examination of all the evidence in the record. Plunkett v. Commissioner,465 F.2d 299, 303 (CA7 1972), affg. a Memorandum Opinion of this Court; [14]Mensik v. Commissioner,328 F.2d 147 (CA7 1964), affg. 37 T.C. 703 (1962); Stone v. Commissioner,56 T.C. at 224; Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud is an actual intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. E.g., Webb. v. Commissioner,394 F.2d 366, 377 (CA5 1968), affg. a Memorandum Opinion of this Court; [15]Powell v. Granquist,252 F.2d 56, 60 (CA9 1958); Estate of Pittard v. Commissioner,69 T.C. 391, 400 (1977); McGee v. Commissioner,61 T.C. 249, 256-257 (1973), affd. 519 F.2d 1121 (CA5 1975). This intent may be inferred from circumstantial evidence ( Powell v. Granquist,252 F.2d at 61; Gajewski v. Commissioner,67 T.C. 181, 200 (1976), *485 affd. without published opinion 578 F.2d 1383 (CA8 1978); Beaver v. Commissioner,55 T.C. 85, 92-93 (1970)), including the implausibility of the taxpayer's explanations. Boyett v. Commissioner,204 F.2d 205, 208 (CA5 1953), affg. a Memorandum Opinion of this Court. [16]
Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of it is attributable to fraud. E.g., Lee v. United States,466 F.2d 11, 16-17 (CA5 1972); Plunkett v. Commissioner,465 F.2d at 303; Kreps v. Commissioner,351 F.2d 1, 6 (CA2 1965), affg. 42 T.C. 660 (1964). In carrying his burden, respondent may not rely on petitioner's failure to meet his burden of proving error in respondent's determinations as to the deficiencies (e.g., Habersham-Bey v. Commissioner,78 T.C. 304, 312 (1982), and cases there cited), but he may rely on the deemed admissions. Marshall v. Commissioner,85 T.C. 267 (1985). See Freedson v. Commissioner, supra; Rule 90(f). [17] *486 Applying the foregoing standards to the instant case, we conclude that respondent has shown by clear and convincing evidence (the deemed admissions), and we have found, that -- (1) Petitioner received $ 29,250 in 1978 and $ 11,750 in 1979 for his services in an illegal scheme for which he was convicted. (2) These amounts constituted income subject to tax; petitioner knew this, but nevertheless did not report these amounts on his tax returns for these years. (3) As a result of these omissions, petitioner underpaid his income tax for 1978 and underpaid his income tax for 1979. (4) Petitioner's omissions for 1978 were due to fraud and his underpayment for 1978 was due to fraud; his omissions for 1979 were due to fraud and his underpayment for 1979 was due to fraud. We hold for respondent. [18] *487 An appropriate order will be issued granting respondent's motion for summary judgment; decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice & Procedure. 2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue. ↩
3. In his petition, petitioner claimed overpayments of $ 16,989.50 for 1978 and $ 4,075.50 for 1979.↩
4. The notice of deficiency was addressed to petitioner and Brenda Royster, his wife; petitioner's wife did not file a petition in this Court. ↩
5. Respondent states that he is not relying on the second request for admissions for purposes of his motion for summary judgment. ↩
6. Forms W-2 attached to the tax return show that petitioner received $ 22,746.92 from West Penn Power Company (hereinafter sometimes referred to as "West Penn") and petitioner's wife received $ 5,590 from Second National Bank of Masontown. 7. Forms W-2 attached to the tax return show that petitioner received $ 17,290.47 from West Penn and $ 60 from a union local, and petitioner's wife received $ 3,640 from Second National Bank of Masontown. ↩
8. Petitioner's trade or business as an excavator is shown as producing gross receipts of $ 3,100 for 1978 and $ 5,000 for 1979. Petitioner deducted depreciation of $ 3,863 for 1978 and $ 5,090 for 1979, as well as other business expenses, to produce the claimed losses. Respondent has not made adjustments to the Schedule C items. ↩
9. The tax return does not include any explanation of this amount. Respondent has not made adjustments to this term. ↩
10. Petitioner and his wife subsequently filed a Form 1040X to claim an investment credit of $ 670, reducing their income tax liability to $ 2,179. ↩
11. The deemed admissions and the criminal conviction take the instant case out of the area described in Anastasato v. Commissioner,794 F.2d 884 (CA3 1986), vacating and remanding T.C. Memo. 1985-101, decision reinstated T.C. Memo. 1986-400↩. 12. SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.
[The subsequent amendments of this provision (by sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 616, and sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742) do not affect the instant case.] ↩
13. SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE CASES. (a) Fraud. -- In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect to such issue shall be upon the Secretary. ↩
14. T.C. Memo. 1970-274↩. 15. T.C. Memo. 1966-81↩. 16. Dated March 14, 1951. ↩
17. Rule 90(f) provides, in pertinent part, as follows: RULE 90. REQUESTS FOR ADMISSION * * * (f) Effect of Admission: Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the admission. * * * 18. Petitioner has not explained the basis for his claim for overpayments (see n. 3, supra) and no basis appears to us. Petitioner does not refer to this matter in his judgment. We conclude that there is no genuine issue as to any material fact regarding the claim for overpayments and that a decision may be rendered for respondent on this issue, also, as a matter of law.