**In re Herbert CARLSON and Margaret Carlson, Appellants,**

v.

**INTERNAL REVENUE SERVICE, Appellee.**

**No. 96 C 1660.**

United States District Court, N.D. Illinois, Eastern Division.

July 17, 1996.

Herbert P. Carlson, Iversen, Carlson & Associates, Chicago, IL, for appellants.

Joel Robert Nathan, United States Attorney's Office, Chicago, IL, for appellee.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

On February 23, 1994, Herbert and Margaret Carlson filed a voluntary petition for bankruptcy under Chapter 11 of the bankruptcy code. The Internal Revenue Service ("IRS") subsequently filed a proof of claim against the Carlsons for various unpaid taxes, penalties, and interest. The Carlsons objected to the IRS's secured claim for interest and penalties on unpaid income taxes for the years 1990 through 1992. The Carlsons also objected to the IRS's secured claim for unpaid social security taxes ("FICA taxes") and unsecured priority claims for FICA tax-

es and federal unemployment taxes ("FUTA taxes"). On February 5, 1995, the bankruptcy court entered judgment against the Carlsons and in favor of the IRS on most of the IRS's claim. The Carlsons appeal the bankruptcy court's judgment.

## BACKGROUND

Mr. Carlson is an attorney who operates a law office that currently has a support staff and two attorneys working on a case-by-case basis. Mrs. Carlson is not employed. The Carlsons file their tax returns jointly, and reported taxable income in the amount of $148,868 for 1990, $268,910 for 1991 and $75,-646 for 1992. The Carlsons' personal residence is located on Lake Shore Drive, Chicago, Illinois, and was valued at $1,000,000 (subject to a $425,000 secured claim) on the Schedule A filed with the bankruptcy court. The property is held in an Illinois Land Trust with the Chicago Title and Trust Company serving as trustee. The beneficial interest has been assigned as security for a loan. Prior to 1994, the Carlsons also owned a house in LaPorte County, Indiana, which was scheduled with a value of $125,000. *Memorandum Opinion*, No. 94 B 797 *1 (Bankr.N.D.Ill. Dec. 5, 1995) ("the bankruptcy court opinion").

As a result of their failure to pay federal income taxes for the years 1990, 1991 and 1992, the Carlsons incurred $153,824 in tax liability, plus statutory penalties and interest. The Carlsons also incurred FICA tax liability during this period in connection with employees working at Mr. Carlson's law office. Due to the Carlsons' continuing failure to pay these liabilities, the IRS filed federal tax lien notices in Cook County, Illinois, on December 16, 1992, December 13, 1993, and February 9, 1994. On February 9, 1994, the IRS seized the Carlsons' residence in Chicago (although the Carlsons continue to reside there because the IRS never sold the property). On February 11, 1994, the Carlsons transferred their Indiana property by warranty deed to their son, Peter Carlson, and on February 15, 1994, the deed was recorded in LaPorte County. On February 23, 1994, the Carlsons filed a voluntary petition under Chapter 11 of the bankruptcy code. The bankruptcy court opinion at 1–2.

After the Carlsons sought bankruptcy protection, the IRS filed a federal tax lien notice duplicating the February 9, 1994 tax lien notice. The duplicate notice was filed on April 29, 1994, apparently due to a defect in the IRS's automated systems. On November 8, 1994, the IRS filed a certificate of release that withdrew the April 29 duplicate notice. On February 22, 1995, Mr. Carlson was notified that the form 941 and form 940 tax returns he filed for the years 1993 and 1994 (relating to FICA and FUTA taxes) were selected for audit by the IRS.[1] The bankruptcy court opinion at 2.

After the Carlsons sought bankruptcy protection, the IRS filed a proof of claim against them reflecting the liabilities the IRS had secured by tax lien. On November 14, 1994, and again on March 31, 1995, the IRS filed amended proofs of claim adding unsecured priority claims stemming from unpaid FICA and FUTA taxes for 1992 and 1993. The bankruptcy court opinion at 2.

The Carlsons objected to the IRS's secured claim for interest and penalties on unpaid income taxes for the years 1990 through 1992. The Carlsons argued these liabilities should be abated because: (1) § 505(a) of the bankruptcy code allows the abatement of interest stemming from late taxes; (2) the IRS violated the automatic stay when it filed a duplicate tax lien and made audit requests after the Carlsons filed for bankruptcy; (3) when the IRS seized the Carlsons' Chicago residence, they failed to properly notify the trustee of the Illinois Land Trust that held title to the property and the mortgagee of the property, and they failed to comply with other notice procedures set forth in the Internal Revenue Manual ("IRM"); and (4) the Carlsons' payment of medical expenses for their disabled child prevented them from satisfying their income tax obligations, and therefore constituted reasonable cause for their failure to pay. The

---

1. The bankruptcy court's opinion indicates Mr. Carlson received notice of the audit in 1994, not 1995. This appears to be a typographical error.

Carlsons objected to the FICA and FUTA tax claims on grounds that the IRS wrongly characterized workers at Mr. Carlson's law office as employees rather than independent contractors.

The bankruptcy court entered a memorandum opinion on December 5, 1995, and judgment on February 5, 1996. The bankruptcy court held that the IRS's secured claim for interest and penalties was valid. The bankruptcy court also held that most of the IRS's FICA and FUTA tax claims were valid.

## ANALYSIS

### I. STANDARD OF REVIEW

■ The bankruptcy court proceeding was a core proceeding. 28 U.S.C. § 157(b)(2)(B). Accordingly, the court reviews the bankruptcy court's findings of fact under the clearly erroneous standard, and the bankruptcy court's conclusions of law *de novo*. Fed. R.Bankr.P. 8013; *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986).

### II. SECTIONS 505(a) AND 6404(e)

■ The IRS assessed interest against the Carlsons under § 6601(a) of the tax code for taxes they failed to pay in 1990, 1991, and 1992.[2] The Carlsons argue the bankruptcy court erred when it declined to abate the interest assessed against them pursuant to its powers under § 505(a) of the bankruptcy code.[3]

The plain language of § 6601 mandates an interest assessment on late tax payments. *Purcell v. U.S.*, 1 F.3d 932, 942 (9th Cir. 1993); *In re Cabazon Indian Casino*, 57 B.R. 398, 403 (9th Cir. BAP 1986). Section 505(a) does not indicate otherwise. Nor do the bankruptcy court's equitable powers allow it to override the plain mandate of § 6601. *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 554 (6th Cir.1994). Accordingly, the

bankruptcy court did not err when it declined to abate the interest assessed against the Carlsons pursuant to its powers under § 505(a).

■ The Carlsons argue the bankruptcy court erred when it declined to abate the interest against them under § 6404(e) of the tax code. Section 6404(e) allows the abatement of interest that is attributable to errors or delays by officers or employees of the IRS. The Carlsons contend the IRS is to blame for their late tax payments because the duplicate lien filed by the IRS prevented them from acquiring financing and paying their taxes.

The Carlsons provide no evidence the IRS's duplicate lien prevented them from acquiring financing and paying their taxes to any greater extent than the IRS's prior February 9 lien. Moreover, although § 6404(e) provides the IRS with discretion to abate interest attributable to errors or delays of its officers or employees, the Carlsons have not sought relief under § 6404(e) from the IRS, and it is doubtful that an administrative decision by the IRS pursuant to this section is subject to judicial review. *Selman v. United States*, 941 F.2d 1060, 1064 (10th Cir.1991) ("language, structure and legislative history of § 6404(e)(1) indicates that Congress meant to commit the abatement of interest to the Secretary's discretion" and precludes judicial review); *Bax v. Commissioner*, 13 F.3d 54, 58 (2nd Cir.1993); *Horton Homes, Inc. v. United States*, 936 F.2d 548, 551–52 (11th Cir.1991). Accordingly, the bankruptcy court did not err when it declined to abate the interest assessed against the Carlsons under § 6404(e).

### III. VIOLATIONS OF THE AUTOMATIC STAY

■ The IRS assessed penalties against the Carlsons under §§ 6651(a)(2) and 6654(a)

---

2. Section 6601 provides in pertinent part:
   If any amount of tax imposed by this title ... is not paid on or before the last date proscribed for payment, interest on such amount ... shall be paid for the period from such last date to the date paid.
   26 U.S.C. § 6601(a).

3. Section 505(a)(1) states in pertinent part:

[T]he court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
11 U.S.C. § 505(a)(1).

of the tax code for taxes they failed to pay in 1990, 1991, and 1992.[4] The Carlsons contend the bankruptcy court erred when it declined to abate these penalties based on the duplicate lien filed by the IRS. The Carlsons maintain the duplicate lien violated the automatic stay because it was filed after their bankruptcy petition.

Section 362(a)(4) of the bankruptcy code imposes a stay on "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). Its intended effect is to preserve the *status quo* as of the date of the bankruptcy proceeding. The Carlsons provide no legal support for their contention that the duplicate lien violated § 362(a)(4) or any other provision of the bankruptcy code. Nor does it appear that the duplicate lien created, perfected, or enforced a lien interest considering that the duplicate lien could not establish any new rights beyond those already acquired by the prior February 9 lien. Accordingly, the bankruptcy court did not err when it denied an abatement of penalties based on the duplicate lien.

■ The Carlsons contend no lien remained against their property after the duplicate lien was released because the duplicate lien superseded or merged with all prior liens. However, the cases cited in support of this argument have nothing to do with duplicative liens. Accordingly, the Carlsons demonstrate no basis in law for their merger theory.

■ The Carlsons contend the bankruptcy court erred when it declined to abate the penalties assessed against them based on two audit requests made by the IRS. The audit requests were made on February 22, 1995 and March 10, 1995, and related to unpaid FUTA taxes from 1993 and 1994. The bankruptcy court opinion at 6. The Carlsons maintain the audit requests violated the auto-

matic stay because they were an attempt to gather evidence relating to the status of Mr. Carlson's law officer workers after the Carlsons filed for bankruptcy.

■ The automatic stay did not prohibit the IRS from issuing a notice of tax deficiency, or *a fortiori*, engaging in inquiries related to the calculation of a deficiency. § 362(b)(9); *H & H Beverage Distributors v. Department of Revenue, Commonwealth of Pennsylvania*, 850 F.2d 165, 168–69 (3rd Cir. 1988); *see also* 1A Collier on Bankruptcy, § 12.06[2] (15th ed. & Supp.1995). Rather, the stay only prohibited the formal assessment of a tax liability or the creation of a lien by the IRS. *H & H Beverage Distributors*, 850 F.2d at 168–69; *In re Ribs–R–Us, Inc.*, 828 F.2d 199, 203 (3rd Cir.1987) ("by filing a petition for reorganization, a debtor obtains a stay of pending and future litigation, including assessment of federal tax liabilities"). The investigation of Mr. Carlson's workers was not a formal assessment of tax liability or the creation of a lien. Rather, it was part of calculating the Carlsons' tax liability for 1993 and 1994. Accordingly, the bankruptcy court did not err when it denied an abatement of penalties based on the IRS's audit requests.

## IV. *FAILURE TO SERVE PROPER NOTICE UNDER § 6335*

■ The Carlsons argue the bankruptcy court erred when it declined to abate the penalties assessed against them because the IRS seized the Carlsons' Chicago residence without serving notice of the seizure on the trustee of the Illinois Land Trust that held title to the property and the mortgagee on the property.

■ This argument misses the mark. Notice of seizure is an element of the collection procedure mandated by the Internal Reve-

---

4. Section 6651(a)(2) states in pertinent part:
   In case of failure . . . to pay the amount shown on any tax return . . . on or before the date proscribed for payment of such tax . . . unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return [a penalty].
   26 U.S.C. § 6651(a)(2).

Section 6654(a) states in pertinent part:
In the case of any underpayment of estimated tax by an individual, there shall be added to the tax . . . an amount determined by applying—(1) the underpayment rate established under s 6621, (2) to the amount of the underpayment, (3) for the period of the underpayment.
26 U.S.C. § 6654(a)

nue Code. 26 U.S.C. § 6335. Failure to provide notice may cause a subsequent sale to be invalid. *See, e.g., Johnson v. Gartlan, Jr.,* 334 F.Supp. 438 (E.D.Va.1971). The Carlsons received actual notice of the seizure. The bankruptcy court opinion at 8. Moreover, although a violation of § 6335 may invalidate a subsequent sale, the Carlsons provide no authority it is also grounds for an abatement of tax liability. Accordingly, the bankruptcy court did not err when it denied an abatement of penalties based on the IRS's failure to provide proper notice under § 6335 to the trustee and mortgagee of the Carlsons' residence.

## V. FAILURE TO FOLLOW IRM GUIDELINES

■ The Carlsons contend the bankruptcy court erred when it declined to abate the penalties assessed against them based on the IRS's failure to comply with IRM procedures for contacting delinquent taxpayers prior to the seizure of their property. The Carlsons argue the IRS's failure to follow these procedures violated the United States Constitution.

IRM requirements are merely directory, not mandatory, and noncompliance does not render an action of the IRS invalid. *United States v. Horne,* 714 F.2d 206, 207 (1st Cir. 1983). Courts have generally held the IRM is not for the protection of taxpayers. *Vallone v. Commissioner,* 88 T.C. 794, 807–08, 1987 WL 49300 (1987); *see also United States v. Mapp,* 561 F.2d 685, 690 (7th Cir. 1977); *United States v. Lockyer,* 448 F.2d 417, 420–21 (10th Cir.1971); *see also United States v. Kaatz,* 705 F.2d 1237, 1243 (10th Cir.1983) (violation of the [Audit Technique] handbook does not prove a violation of any constitutional right). Accordingly, the bankruptcy court did not err when it denied an abatement based on the IRS's failure to comply with IRM guidelines.

## VI. REASONABLE CAUSE

■ The Carlsons argue the bankruptcy court erred when it declined to abate the penalties against them based on the their payment of $170,000 in medical expenses for their disabled child. The Carlsons contend their child's medical expenses prevented them from satisfying their income tax obligations, and therefore demonstrates "reasonable cause" for their failure to pay, and not "willful neglect."

As discussed above, the penalties against the Carlsons were assessed under § 6651(a)(2) of the tax code. Section 6651(a)(2) provides that such penalties may be avoided if "it is shown that such failure [to pay] is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). The Supreme Court has noted "the term 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference." *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 690, 83 L.Ed.2d 622 (1985). The Treasury department has explained, "[a] failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid on the due date." Treas. Reg. § 301.6651–1 (1991).[5] "A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due." Treas.Reg. §§ 301.6651–1(c)(1) & (2) (1991). "[T]he term 'undue hardship' means more than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer from making payment on the due date of the amount with respect to which the extension is desired." Treas.Reg. § 1.61611(b) (1991).[6]

---

**5.** This interpretation of reasonable cause "merits deference" since it is "consistent with Congress' intent, and over 40 years of case law as well." *Boyle,* 469 U.S. at 246 n. 4, 105 S.Ct. at 690 n. 4.

**6.** These further refinements of the "reasonable cause" requirement are also entitled to deference because they are reasonable. *Goulding v. United States,* 957 F.2d 1420, 1423 (7th Cir.1992) ("Treasury Regulations are presumptively valid,

Outside the bankruptcy context, the burden of proof rests on the taxpayer in disputes with the IRS over the validity of claims. *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935). Within the bankruptcy context, however, the burden of proof lies on the claimant with respect to any claims asserted against the debtor. Fed.R.Bankr.P. 3001(f). As a result, a division currently exists among the Circuits as to whether the IRS or the taxpayer has the ultimate burden of proof when tax claims are objected to in bankruptcy. Some courts have held that the taxpayer retains the same burden of proof he would have assumed outside bankruptcy. *See, e.g., In re Landbank Equity Corp.,* 973 F.2d 265, 270–71 (4th Cir.1992); *In re Resyn Corp. v. United States,* 851 F.2d 660, 663 (3rd Cir.1988); *In re Uneco, Inc.,* 532 F.2d 1204, 1207 (8th Cir.1976). Other courts have determined that the IRS bears the burden due to its assertion of the claim in the bankruptcy context. *See, e.g., California State Bd. of Equalization v. Official Creditors' Committee,* 837 F.2d 696, 698 (5th Cir.1988); *In re Gran,* 964 F.2d 822, 827 (8th Cir.1992); *In re Federated Dept. Stores, Inc.,* 135 B.R. 950, 957–58 (Bankr.S.D.Oh.1992); *Internal Revenue Service v. Levy,* 130 B.R. 28, 32 (E.D.Va. 1991); *In re Dakota Industries, Inc.,* 131 B.R. 437, 444 (Bankr.D.S.D.1991). Even when the ultimate burden of proof is placed on the IRS, however, the debtor is required to produce some evidence to shift the burden of going forward. *Fidelity Holding Co., Ltd.,* 837 F.2d at 698.

The bankruptcy court noted the definitions of willful neglect and reasonable cause discussed above. The bankruptcy court also noted the circuit conflict with respect to the ultimate burden of proof when tax claims are objected to in bankruptcy. The bankruptcy court then concluded that regardless which party bears the ultimate burden of proof, the Carlsons failed to demonstrate they were entitled to an abatement under § 6651(a)(2). The court reasoned the Carlsons may have shown no willful neglect because Mr. Carlson testified his mind was too preoccupied with his son's disability, as well as the law office and workers he was supporting, to give serious consideration to his tax liabilities or financing alternatives. The court further reasoned the Carlsons made no showing of reasonable cause because they did not present any evidence that they exercised ordinary business care and prudence in providing for payments of their tax liability, or that they would have suffered undue hardship if they had paid their tax liabilities in a timely manner. The bankruptcy court concluded the Carlsons were not entitled to an abatement based on their son's medical costs.

The Carlsons contend the bankruptcy court erred because the IRM provides that one reason for relief from penalties is "delay ... caused by death or serious illness of the taxpayer or the death or serious illness in his/her immediate family." Int.Rev.Man. § 4562.2 (1988). As discussed above, however, the IRM does not have the force or effect of law, and is not intended for the protection of taxpayers. *Vallone,* 88 T.C. at 804, 1987 WL 49300. Moreover, even if the IRM did have the force of law, the Carlsons presented no concrete evidence their son's illness caused their failure to pay taxes in 1990, 1991 and 1992. Although Mr. Carlson testified to $170,000 in medical expenses during these years, the Carlsons presented no evidence showing the amount of money remaining for the payment of taxes. Nor did they present any evidence showing that their son's medical bills prevented them from earning income, or prevented them from raising money to pay their tax liabilities. In fact, the record reveals that the Carlsons reported $765,477 of taxable income from 1990 through 1992, and that until December 1992, when the IRS placed a lien on the Carlsons' Chicago residence, the Carlsons could have obtained loans to pay their tax liabilities by pledging their real estate as collateral. At the time, the Carlsons' two homes had a fair market value of $1.125 million with only a $425,000 mortgage. The bankruptcy court opinion at 11–12. Moreover, even after the tax lien was filed, there is evidence the Carlsons had loan opportunities available to them. They de-

and the courts defer to them so long as they are reasonable." (citations omitted)).

clined these loans because the interest rate was unattractive. Trial Transcript at 232.

The Carlsons argue they demonstrated reasonable cause with Mr. Carlson's testimony that he was too preoccupied with his son's disability to pay taxes. As discussed by the bankruptcy court, however, in order to demonstrate reasonable cause a taxpayer must show ordinary business care and prudence in providing for the payment of his or her tax liability, and either an inability to pay or undue hardship that would have resulted from payment. The fact that Mr. Carlson was preoccupied with his son's illness does not show he acted with ordinary care and prudence. Nor does it show the Carlsons could not pay their taxes on time, or would have suffered undue hardship if they had done so. Accordingly, Mr. Carlson's testimony he was preoccupied fails to satisfy the reasonable cause prong of the test for an abatement of penalties under § 6651(a)(2).

## VII. *FICA AND FUTA TAXES*

■ Under the Internal Revenue Code, an employer is required to pay one-half of the total FICA taxes assessed against its employees, and withhold from paychecks those FICA taxes owed by the employees themselves. 26 U.S.C. §§ 3101, 3102(a), 3402(a). An employer is also obligated to pay FUTA taxes for its employees. 26 U.S.C. § 3101. The bankruptcy court held that most of the IRS's FICA and FUTA tax claims against the Carlsons were valid.

The Carlsons argue that some of the IRS's FICA and FUTA tax claims were invalid because they were "estimated claims." The Carlsons conclude the bankruptcy court erred when it allowed these claims. The Carlsons offer no legal authority for their assertion that a claim is invalid if it is based on an estimate. The Carlsons do not clearly identify the estimated claims they challenge, or provide any evidence showing that these claims are unreliable. Accordingly, the Carlsons fail to persuade the court the bankruptcy court erred with respect to the IRS's FICA and FUTA tax claims.

### CONCLUSION

The judgment of the bankruptcy court is affirmed.