**In re Judith Eloise HANEY.**

**Robert Fureigh, Plaintiff,**

v.

**Judith Eloise Haney, Defendant.**

**Bankruptcy No. 98–41169 S.**
**Adversary No. 98–4059.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Aug. 25, 1999.

James Dendy, Little Rock, AR, for plaintiff.

Judith Eloise Haney, Hot Springs Village, AR, debtor pro se.

M. Randy Rice, Chapter 7 trustee.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

MARY D. SCOTT, Bankruptcy Judge.

This Cause came before the Court for trial of the complaint to determine dischargeability of debt. This adversary proceeding has a lengthy history and it appears that the dispute between the parties is of long and acrimonious standing. This action was filed on May 7, 1998, in which the debtor's former husband alleges that debts the debtor was required to pay to him as a result of their divorce may not be discharged in this bankruptcy case pursu-

ant to section 523(a)(4), (15). In the pretrial submissions, the plaintiff indicated that he would not pursue the section 523(a)(4) action and thus the matter proceeded on the section 523(a)(15) action. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

In the course of the litigation, the debtor filed her answer *pro se,* subsequently hired two attorneys and at trial was again *pro se.* The Court file also reveals that the parties have been conducting discovery since the early stages of the litigation, at least since the beginning of May 1998, and that it continued nearly to the eve of trial, still on a rather acrimonious basis. On August 5, 1998, the Court issued an order setting the matter for trial to be heard on November 6, 1998. Since that setting, trial was twice continued. Trial was scheduled to begin at 1:30 p.m. on August 4, 1999, and, despite motions by the debtor to stay the proceeding,[1] trial began on that date, concluding on August 5, 1999. The parties were directed to submit their closing statements in writing on or before August 16, 199, with replies to be filed by August 20, 1999. The plaintiff timely submitted his argument and brief, but the debtor failed to submit any brief or argument.[2]

## I

■■■ The parties married in 1988 and divorced in January 1994. Under the terms of the divorce decree the debtor was to pay the plaintiff the sum of approximately $52,000.00 plus interest and attorneys fees in the amount of $5,045.00.[3] There is no dispute that these debts are in the nature of property and debt settlement; no spousal support was awarded to either party. In 1994, Congress amended the Bankruptcy Code to add a new section 523(a)(15):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Under this provision, the marital debt is presumptively

---

**1.** On the eve of trial, the debtor sought to dismiss her chapter 7 bankruptcy case, but also appeared to indicate that she would file another bankruptcy case.

**2.** Although this failure may appear to be inexplicable in light of her actions in pursuing her defenses as well as the plethora of motions she has filed, refiled, amended, and argued, the Court believes it is further evidence of her instabilities, discussed below.

**3.** Although she failed to appear at the trial of the divorce action, the debtor has continuously and contumaciously reiterated her dissatisfaction with those proceedings by attempting to collaterally attack the findings and orders of the state court in this adversary proceeding. The state court has also ruled that her repeated attempts to attack the judgment are barred. *Fureigh v. Haney,* No. 92–3110, slip op. (Chancery Ct. Pulaski County, Arkansas Sept. 12, 1996).

nondischargeable unless the debtor can demonstrate that she does not have the ability to pay the debt *or* the benefit to her is greater than the detriment to her former spouse. *See generally In re Crosswhite,* 148 F.3d 879, 40 C.B.C.2d 519 (7th Cir.1998); *Moeder v. Moeder (In re Moeder )*, 220 B.R. 52 (8th Cir. BAP 1998). That is, the nondebtor plaintiff must first demonstrate only that the debt was incurred in the course of divorce or later order, whereupon the burden shifts to the debtor to demonstrate either that the debtor does not have the ability to pay the debt or that discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse. *See In re Morris,* 193 B.R. 949 (Bankr.S.D.Cal.1996). Under the first prong of the statute, the analysis is based solely upon the finances of the debtor; the finances of the nondebtor are not relevant until the second prong of the statute is analyzed. *See In re Gantz,* 192 B.R. 932 (Bankr.N.D.Ill.1996). Further, the appropriate analysis includes a view of the debtor's future financial situation, including an ability to make minimal monthly payments on the debt, rather than a static view of the debtor's current ability to pay the debt. *Cf. In re Straub,* 192 B.R. 522 (Bankr.D.N.D.1996); *In re Florio,* 187 B.R. 654 (Bankr.W.D.Mo.1995). Finally, the Court views the parties' circumstances as of the time of trial, rather than any earlier date, in order to fully examine the benefits of the "fresh start" to the debtor, any change in circumstances in employment, and other good or bad fortune which may have befallen or will predictably befall the parties.

## II

■ The debtor must demonstrate that she is either unable to pay the debt or that under equitable considerations, it should be discharged. The debtor has failed to meet her burden that she is unable to pay the debt because she failed to provide any specific information regarding her resources and debts and, to the extent there is information before the Court, she can pay the debt. First, the debtor failed to provide the Court with sufficient information to carry her burden. The debtor's schedules are riddled with admitted inaccuracies, inconsistencies and omissions and she could not, even on the date of trial, state her income. Indeed, some figures seem to have been conjured out of thin air. She apparently owes income taxes, does not know whether these are dischargeable, and, since it appears that the debtor has failed to file income tax returns for the past few years, she cannot ascertain what her tax liability may be. When questioned regarding particular expenses, she could only guess. For example, when questioned regarding a particular $300 expense, she indicated it was "probably" for groceries. Further inquiry revealed that this expense was not in fact for groceries. Her incredibly vague statements regarding income and expenses, combined with the inaccuracies on her schedules constitutes a failure to carry her burden of proof under section 523(a)(15)(A).

In any event, from the evidence before the Court, the debtor is capable of paying the obligation. The debtor is a fully licensed self-employed real estate broker, is generally in good health, and fully capable of working full time and is in fact actively soliciting work. Very soon after filing her chapter 7 petition in bankruptcy she moved from a location where she paid $500 per month in rent to a location on lake property in a resort town, and began paying $1,000 per month in rent. Virtually until the eve of trial, she leased a vehicle for a very high monthly rate. Since she recently purchased a vehicle and provided no evidence that she was unable to obtain financing, her statement that she was required to pay the high rental rate is not credible or justifiable. Her bank records, submitted by the plaintiff, indicate that she has had a substantial income for the past two years. During examination, she admitted that she has the potential to meet her obligations and stated that "arguably

my life style should change." The Court agrees. Plaintiff's evidence indicates that debtor's income is not only sufficient to meet her needs, it is also sufficient to pay the marital debt albeit over some period of time. Accordingly, the debtor fails to meet her burden of demonstrating that she is unable to pay the debt under section 523(a)(15)(A).

### III

■ If the debtor is able to pay the debt, then, under the second paragraph of the statute, the debtor must demonstrate that "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." The terms of this statute require a Court weigh the benefit against the detriment—an odd balancing and an impossibly amorphous standard.[4] Numerous factors regarding the finances, needs, and general merits of each party's position, are considered in generally trying to determine who will suffer more under this analysis. *See, e.g., In re Smither,* 194 B.R. 102 (Bankr.W.D.Ky. 1996).

The debtor testified that she has mental health problems. The Court file in the case, this adversary proceeding, and the conduct of this trial, reveal the credibility of this statement. She testified that she needs therapy and that she has been urged by various doctors to seek such assistance. While she previously had customers, she testified that she had effectively "driven" them away. She even believes that she may have suffered some sort of brain dam-

age a decade ago. While the debtor introduced no supporting documentation or other evidence of her disabilities, the Court can readily believe she has been repeatedly urged to seek professional mental care.

■ The plaintiff is a engineer and a full time employee with the City of Little Rock. Although he recently accepted a cut in pay due to the lack of a position meeting his qualifications, he earns a decent living commensurate with the debtor's income. He asserts that his expenses exceed his income, yet he has managed to pay most of the joint marital debt and he lives modestly, clearly within his means, and will soon have no debt. Although he claims that he has been embarrassed due to his negative financial situation, it was clear from his testimony that much, if not all, of the embarrassment is derived from his pursuit of the debt owed to him by the debtor rather than from his financial circumstances. While it is true that a creditor is entitled to collect a debt and to pursue all legal remedies, it is apparent from plaintiff's actions, demeanor and testimony that he has done so at the expense of his own self-respect, the respect of others, and possibly even his own mental health. He testified that his friends have repeatedly urged him to drop his pursuit of this debt, urging that he will be "better off."[5] His overzealousness even prompted him on more than one occasion to accompany a process server who was to serve papers upon the debtor. Not surprisingly, in one incident, the police were called and the plaintiff was briefly detained. Never-

---

4. The problems resulting from the amorphous standards in the statute are exacerbated by the legislative history and comments which are inconsistent with the statutory language. For example, although paragraph (B) refers to a balancing of the "benefit to the debtor" against the "detriment to the spouse," the comments state that the bankruptcy discharge should be "sacrificed" only if there is a *substantial* detriment to the nondebtor spouse. Moreover, the history seems to indicate that Congress meant primarily to rectify situations in which the parties were nominally referring to support as property settlement. *See* Pro-

ceedings and Debates, 103d Cong., 2d Sess., 140 Cong.Rec. H10,770 (Oct. 4, 1994).

5. The Court does not take into account his assertion that he has had to postpone the possibility of marriage and starting a family inasmuch as he does have a child and there is no evidence that he is actually contemplating matrimony or child rearing. The fact that he does not believe he has sufficient income to support a family does not make the factor relevant if the family is merely a supposition.

theless, the Court must determine whether the benefit to the debtor outweighs the detrimental consequences to the plaintiff. This is an unusual and unpleasant task which Congress assigned to the bankruptcy court,[6] and, in this instance, it is particularly unsavory because the extreme acrimony between the parties has rendered this more than a financial dispute.

In *In re Smither*, 194 B.R. 102 (Bankr. W.D.Ky.1996), the court articulated a test and a lengthy list of factors which may be utilized in making the balancing determination of section 523(a)(15)(B), which primarily balanced the financial effect of the discharge of the debt. In *Smither*, the court compared the relative standards of living to determine the true benefit or detriment of the discharge, looking particularly to whether the spouse, former spouse or children would suffer as a result of the discharge and whether the standards of living would change. *Smither*, 194 B.R. at 111.

In the instant case, the standards of living of either party will not materially change if the debt is discharged. The debtor has, despite voracious collection attempts, avoided payment of this debt for over five years and, given her instabilities—or in spite of them, will continue to do so. Although she can acquire clients, her instabilities preclude her from maintaining such contacts. Her income and expenses are uncertain, and, should the Internal Revenue Service begin to inquire into her finances, she may be subject to problems from her inattentiveness. In contrast, the plaintiff enjoys a steady income which is about to increase. He is better educated, has fewer expenses, and is capable of maintaining a stable financial, physical and emotional situation.

The evidence clearly established is that both parties would benefit by discharge of this obligation. While it is true that the parties are virtually equivalent in their ability to pay, and the plaintiff has in fact been the one to pay the debt, both parties have been mentally and financially drained not merely by the debt but also by the extreme bitterness between them. The benefit to the debtor is her discharge in bankruptcy, including the discharge of her marital debt. Essentially, the detriment to the plaintiff is that he will not be reimbursed for the substantial marital debt that he has had to pay and will be estopped from further pursuing what has evolved into a vendetta against the debtor. While this may seem an unfair result to plaintiff, Congress has indicated that the fresh start in bankruptcy may be preserved in these situations. Both parties, in fact, may be able to obtain a fresh start by this discharge, and, on balance, the benefit to the debtor outweighs the detriment to the plaintiff such that the debt is dischargeable under section 523(a)(15)(B).

## IV

Based upon the foregoing, the Court will enter judgment finding the debt owed by debtor Judith Eloise Haney to Robert Fureigh be dischargeable in this bankruptcy proceeding.

**IT IS SO ORDERED.**

---

6. Although apparently enacted with good intentions, this statute is misguided. The statute, like section 523(a)(5) recognizes that the transactions between persons formerly married to each other are not normal debtor creditor transactions and that the Bankruptcy Code addresses these special issues differently from commercial transactions or other general financial situations. However, a review of the case authority reveals that section 523(a)(15) has created burdens upon the Courts and the parties that were clearly not intended. The statute has been referred to as "sausage," *In re Butler*, 186 B.R. 371, 373–75 (Bankr.D.Vt.1995), transformed into "hash," *In re Dressler*, 194 B.R. 290 (Bankr.D.R.I. 1996), and as a "paving stone on the road to the region of Hades reserved for litigation nightmares," *In re Smither*, 194 B.R. 102 (Bankr.W.D.Ky.1996).